## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

EQMD, INC.,

     Plaintiff,

v.

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN, FARM BUREAU
MUTUAL INSURANCE COMPANY OF
MICHIGAN, LIBERTY MUTUAL FIRE INSURANCE
COMPANY, LIBERTY MUTUAL GENERAL INSRUANCE COMPANY,
LIBERTY MUTUAL INSURANCE CORPORATION, SAFECO INSURANCE
COMPANY OF ILLINOIS, STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY.

     Defendants.

THE MICHIGAN LAW FIRM, PC
Racine M. Miller (P72612)
Donald Teichman (P37817)
Attorneys for Plaintiff
2254 Cole Street, Suite B
Birmingham, MI 48009
Phone: 844.464.3476
Fax: 248.480.0906
racine@themichiganlawfirm.com

## COMPLAINT FOR DECLARATORY AND OTHER RELIEF

i

<u>COMPLAINT – JURY TRIAL DEMANDED</u>

For its Complaint, Plaintiff EQMD, Inc. alleges as follows:

<u>I.  STATEMENT OF THE CASE</u>

This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 USC § 2201 and injunctive relief under FRCP 65, for the purpose of determining an actual controversy between the parties and construing the rights and legal obligations arising under the Michigan Public Health Code and the Michigan No-Fault Statute.  This action seeks a declaration that EQMD has no licensing obligations under the Michigan Public Health Code in connection with its business activity, and that EQMD has legal standing as it claims an interest in the No-Fault benefits that are at issue in connection with incidences which are the subject of the following pending No-Fault Complaints against Defendants by the following individuals and styled as follows:

1. Farm Bureau

    a. Claudette Brown, 3rd Circuit, 17-016273-NF

    b. Claudette Brown, 46th District, GC-18-3439 (6th Circuit App. No. 19-177358-AV)

2. Liberty Mutual

    a. Teisha Jones, 3rd Circuit, 19-005341-NI

2

    b. Troy Waldron, 6th Circuit, 18-170379-NI (COA Case No. 351008)

    c. Chelsea Smith, 3rd Circuit, 19-005512-NI

    d. Dali Shawkat, 3rd Circuit, 16-002594-NF

3. State Farm

    a. Abushawaish       3rd Circuit  18-009807-NF

    b. Ahmad, Hassan   3rd Circuit  19-006957-NF

    c. Bruner, Bertha    3rd Circuit  19-007848-NF

    d. Darrough, Joshep 3rd Circuit 19-006733-NI (COA 351680)

    e. Jones, Maurika    3rd Circuit  18-005418-NF

    f. Kelsey, Jessica     38th Circuit (Monroe) 19-141678-NF

    g. Kina, Milad        3rd Circuit  18-000913-NF

    h. Mathis, Pamela   3rd Circuit  17-005020-NF

    i. Lake, Robbie       3rd Circuit  18-016298-NF

    j. Medrano, Roy      3rd Circuit  18-012429-NF (COA 351224)

    k. Harbi, Nadwa      3rd Circuit  17-015885-NF (COA Nos. 345584, 345924, and 346362, MSC No. 159608)

    l. Neaimai, Ihab      3rd Circuit  17-014900 (COA 351173)

    m. Shimari, Will      3rd Circuit  19-012249-NF

    n. Tika, Amilio        3rd Circuit  18-014833-NF

    o. Toma, Hadeel      16th Circuit 18-004028-NF

p. Traboulsi, Melissa 3rd Circuit 17-017252-NI

q. Breedlove 40th Circuit (Lapeer) 17-051492-NI

r. Antonides 16th Circuit 19-002609-NI

This action is also brough pursuant to 18 U.S.C. §1961, *et seq.* seeking redress for the immediate consequences of the wrongful intentional actions of the Defendants and which involve racketeering activity and other related torts under state law.

This action arises from the fraud perpetrated upon various courts throughout the State of Michigan by Defendants through a conspiracy between and among Defendants (in conjunction with and with the aid of, non-party law firms) of submission to various courts throughout the State of Michigan of material representations, known to be false, made with the intent to (and effect of) surreptitiously having the judicial system deprive non-party EQMD of its property rights, and further, made with the intent to (and effect of) causing the state courts to deny the rights of EQMD to fair hearing and due process of law before having the claims in which EQMD has a valid and significant interest improperly adjudicated[1] and disposed of.

---

[1] Judicially declared "illegal," "unlawful," and/or "non-compensable" for lack of licensing

## Introduction

Defendants are insurance companies, involved in the reimbursement of the reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation ("personal protection insurance benefits") under Michigan's No-Fault Act.

Plaintiff often seeks to recover from Defendants benefits payable for charges for products, services, or accommodations provided to an injured person by its clients.

## EQMD's Business Model

EQMD is a pharmacy management company that works with dispensing practitioners in multiple states (including Michigan) to enable them to more easily manage their orders of medications from properly licensed pharmacies/manufacturers and/or wholesale distributors through the use of EQMD's proprietary software program.  EQMD confirms that Michigan physician groups that it works with have the appropriate drug control and/or pharmacy licenses with the state of Michigan. EQMD, as authorized agent of various Michigan physicians and physician groups, performs a variety of functions including, but not limited to: set up and maintenance of the software to facilitate in-office dispensing systems, inventory management, revenue cycle management, and MAPS (Michigan Automated Prescription System)

reporting; and billing and collections related to medications actually dispensed. Once Michigan physician groups lawfully prescribe, order, receive and dispense medications in their respective offices, EQMD is then charged with the billing and collections for those drugs as part of the agreement between EQMD and the physicians groups. In Michigan, EQMD does not dispense, prepare, carry, store, handle, possess, sell, purchase, repackage, or manufacturer drugs – EQMD merely provides the software, technical support and training for the software, and billing/collection services related to those medications.

<u>Defendants' Tactics</u>

Defendants have been willfully and intentionally abusing the adversary system to disparage EQMD among the bench and bar through material misrepresentations in filings with courts across the State of Michigan and seeking (successfully at times) to have EQMD's claims dismissed without notice to EQMD. Defendants have represented in court filings in No-Fault cases in Michigan that bills submitted by EQMD to No-Fault insurers are for services not "lawfully" rendered under M.C.L. 500.3157 (previous and current versions) and therefore not compensable for the reason that EQMD doesn't have a license for "pharmaceutical involvement[2]" in derogation of the

---

[2] There is no such thing as a "pharmaceutical involvement" license.

Michigan Public Health Code. Because Defendants do not provide notice of these court filings to EQMD, the courts are left to rely solely upon Defendants' misrepresentations, and frequently enter Orders disposing of EQMD claims buying into Defendants' proffered reason that "EQMD is not licensed." Defendants then use these ill-gotten Orders, and use them to bolster and maintain this position even after the release of the LARA determination.

<u>LARA Inquiry</u>

On April 19, 2018, the law firm of Kitch, Drutchas, Wagner, Valitutti & Sherbrook, on behalf of Defendant Farm Bureau made written allegations to the State of Michigan Department of Licensing and Regulatory Affairs Bureau of Professional Licensing Investigations and Inspections that, based only on Health Insurance Claim Forms, that EQMD "has been acting as a whole sale distributor since 2015 in violation of MCL 333.17748 as they have not had the proper licensing." (**Exhibit 1 – LARA Complaint**).  Farm Bureau asked the Agency to "deny EQMD a Pharmacy License if they were to attempt to obtain one and take whatever other action against EQMD you see fit."  This notion was presented to LARA by way of an *inquiry* as to whether EQMD activities required licensing,

From then on, and into the present day, Defendants, and each of them, have managed to pervert this point of inquiry into a fallacious and baseless

"legal theory," incorporating the same into court filings and converting the allegations into misrepresentations of fact material to the determination of certain of EQMD claims to Michigan judges presiding over the claims of injured parties, in which EQMD has a vested interest in derogation of MCR 1.109(e). Further, Defendants' adjusters and investigators persist in their wrongful denials of billings submitted to them by EQMD for the reasons that "the services were unlawfully rendered under Michigan's Public Health Code." Defendants' attorneys are then tasked with abusing the legal process to further achieve these ends.

## II. JURISDICTION & VENUE

1.      Federal question jurisdiction is conferred by 28 USC §§ 1331, 1343(a)(3), 1343(a)(4), 2201 and 2202 over Plaintiff's claims.

2.      Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district or under 28 U.S.C. § 1391(b)(3) as there is no district in which an action may otherwise be brought, and each Defendant is subject to the personal jurisdiction of this Honorable Court.

3.      This Honorable Court has jurisdiction over Plaintiff's pendent state law claims under 28 U.S.C. § 1367.

## III. PARTIES

4.    Plaintiff EQMD is an Illinois corporation with its principal place of business at 100 S. Saunders Road, Suite 150, Lake Forest, Illinois 60045 operating as a nationwide pharmacy management company which supplies a propriety software program to physicians and physician's groups; Plaintiff also provides billing and collection services for medications prescribed by its clients.

### A.  Insurance Defendants

5.    Defendant FARM BUREAU GENERAL INSURANCE COMPANY OF MICHIGAN and Defendant FARM BUREAU MUTUAL INSURANCE COMPANY OF MICHIGAN (collectively "FARM BUREAU") are Michigan corporations with their principal place of business at 7373 West Saginaw Highway, Lansing, Michigan 48909.

6.    Defendant LIBERTY MUTUAL FIRE INSURANCE COMPANY ("LIBERTY MUTUAL") is a Massachusetts corporation with its principal place of business at 175 Berkley Street, Boston, Massachusetts 02116.

7.    Defendant SAFECO INSURANCE COMPANY OF AMERICA is a Massachusetts corporation with its principal place of business at 175 Berkley Street, Boston, Massachusetts 02116, and Defendant SAFECO INSURANCE COMPANY OF ILLINOIS (collectively "SAFECO") is an Illinois company with

its principal place of business at 175 Berkley Street, Boston, Massachusetts 02116.

8.      Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("STATE FARM") is an Illinois corporation with its principal place of business at One State Farm Plaza, Bloomington, Illinois 61710.

### B. Non-Party Entities Affiliated with Defendant Farm Bureau

      a.  Kitch, Drutchas Wagner VaLitutti & Sherbrook ("Kitch")

### C. Non-Party Entities Affiliated with Defendant Liberty Mutual and Safeco

      a.  Law Offices of Christine Grieg

### D. Non-Party Entities Affiliated with Defendant State Farm

      a.  Scarfone & Geen ("Scarfone")

      b.  Hackney Grover

      c.  Miller Canfield, PLC

      d.  Katten Muchin Rosenman, LLP ("Katten")

      e.  Kent E. Gorsuch and Associates ("Gorsuch")

### STATEMENT OF FACTS

### Farm Bureau's Deposition of EQMD , Complaint to LARA, and Subsequent Improper Activities

9.      On April 18, 2017, Attorney Leslie Richter of Kopka Pinkus Dolin took the deposition of Gregory May, President of EQMD, on behalf of Farm Bureau in

the matter of *Shawkat, et. al. v Farm Bureau*, Wayne County Circuit Court case number 16-002594-NF. (**Exhibit 13 – May Transcript –** *Shawkat*).

10.     Upon information and belief, Defendant Farm Bureau provided Ms. Richter with certain questions to ask and/or information to obtain from the deponent, and Farm Bureau reviewed the deposition transcript after the deposition.

11.     The transcript contained sworn statements that EQMD does not provide actual medications,[3] but provides a software[4] and collection services for medications prescribed by licensed physicians; that the doctor pays EQMD a fee for its service that has nothing to do with the amount charged for medications.[5]

12.     One year later, on April 18-19, 2018, non-party Kitch, on behalf of Defendant Farm Bureau, filed a complaint with the Michigan Department of Licensing and Regulatory Affairs ("LARA")[6] making multiple baseless accusations, including, but not limited to the following:

   a. "EQMD, Inc. has acted as a Pharmacy without the proper licensing as required by MCL 333.17748"

   b. "EQMD, Inc. ... has operated within the state of Michigan providing pharmacy services, without a license, since at least 2015."

---

[3] Ex. 13 pg 8, ln 6
[4] Ex. 13 pg 10 ln 19
[5] Ex 13 pg 32, lns 3-13
[6] (**Ex. 1**)

c.  "To do business in this state, a pharmacy, manufacturer, or wholesale distributor ... must be licensed" (cleaned up)

d.  "unlawful pharmacy services provided by EQMD" *Id.*

13.    On February 21, 2019, LARA rendered its determination that EQMD did not require a license for its activities, and sent notice of same directly to Farm Bureau.[7]

14.    On May 3, 2019, EQMD, through counsel, sent this determination on to each Defendant, including a list of outstanding accounts.[8]

15.    Defendant Farm Bureau has filed subsequent motions for summary disposition regarding EQMD bills making false and improperly allegations because Farm Bureau already had in its possession Gregory May's April 18, 2017 deposition testimony regarding EQMD practices and other information to indicate that EQMD was not unlawfully billing Farm Bureau.

16. Defendant Farm Bureau has acted with reckless disregard for the rights of EQMD and continue to do so.  *See e.g. Claudette Brown* proceedings. **(Exhibit 2 – Response Brief to Mtn to Reinstate).**

17. Prior proceedings that Farm Bureau and Kitch initiated with the LARA BPL terminated in favor of EQMD.  **(Exhibit 3 – LARA BPL Determination).**

---

[7] **(Ex. 3)**
[8] **(Ex. 12)**

18. Kitch has even since verified and advised its client St. Clair Ortho to contract EQMD after an extensive review for the EQMD contract, a legal bill that EQMD actually reimbursed St. Clair Ortho for.

19. That as Farm Bureau and Kitch both had information and/or should have had information indicating there was no probable cause to initiate the LARA BPL proceedings and/or other proceedings against EQMD.

20. The LARA BPL administrative proceedings were terminated in favor of EQMD. (**Ex. 3**).

21. Malice exists because Farm Bureau knew from information submitted by EQMD, deposition testimony of Gregory May, LARA BPL documentation, and/or the Order from *Al-Abdullah* (**Exhibit 4 -** *Al-Abdullah* **Order**) which was the first time that a Michigan trial court ruled on the EQMD issue as a matter of law after EQMD obtained and produced the redacted LARA BPL complaint and findings, EQMD was not violating the Michigan Public Health Code, but proceeded to employ aggressive and improper tactics to seek dismissals of EQMD billings without adequate due process.

22. Upon information and belief, Kitch performed legal services for a physician group that has conducted business with EQMD, St. Clair Orthopaedics and Sports Medicine PC ("St. Clair Ortho").

23.     According to Kitch Invoice 452720, provided to, and ultimately paid for by EQMD, Inc., Kitch reviewed a standard agreement between EQMD and a physician group for St. Clair Ortho from June 13, 2019 to September 10, 2019.

24.     It appears that after redlining EQMD's proposed standard agreement, Kitch approved it for St. Clair Ortho.

25.     As such, Kitch assisted one of its other clients in contracting with EQMD for pharmacy management services, while simultaneously maintaining that EQMD's services are unlawful for want of a license.

26.     Presumably, Kitch advised its client to contract with EQMD because the arrangement was a lawful one that was compliant with applicable authorities.

27.     Kitch, on behalf of Farm Bureau, has filed motions in trial courts to dismiss EQMD's bills, alleging that EQMD is conducting illegal business operations.

28.     An example of Farm Bureau and Kitch's efforts to injure EQMD can be found in the Claudette Brown dispute, being litigated as Brown v Farm Bureau, Wayne County Circuit Court case number 17-016273-NF and on appeal from the 46th District Court to the Oakland County Circuit,  EQMD, Inc. (Claudette Brown) v Farm Bureau¸ 2019-177358-AV.

29.     In the Wayne County Brown matter, which is a first-party No-Fault case, Farm Bureau filed a dispositive motion to dismiss EQMD's bills.

30.    EQMD obtained an assignment from Brown and filed a direct suit

against Farm Bureau prior to the dispositive motion hearing, in the 46th

judicial district court.

31.    EQMD notified all relevant parties that the action was assigned to

EQMD, and that EQMD filed the action in the 46th District Court so the

Wayne County motion was moot.

32.    Kitch, on behalf of Farm Bureau appeared for the hearing in Wayne

County anyway on date, and encouraged the Wayne County Circuit Court to

dismiss the bill.

33.    Kitch, on behalf of Farm Bureau, then filed a dispositive motion as a first

responsive pleading in the 46th District Court action claiming that because

the Wayne County Circuit Court already ruled on the issue, the 46th District

Court must dismiss the matter.

34.    Kitch failed to disclose to either court in the Brown matters that it filed a

request for investigation with LARA, the appropriate administrative agency,

and that LARA was actively reviewing whether EQMD's operations required a

license under the Michigan Public Health Code.

35.    Kitch and Farm Bureau both have actual knowledge that EQMD is not

required to be licensed under the Michigan Public Health Code, law, yet they

have persisted to litigate EQMD claims, alleging Public Health Code violations,

knowing full well the falsity of such allegations; effectively shifting the liability for EQMD bills to the insureds.

36.    Each Defendant has worked together directly, indirectly, and/or through their employees, agents, and/or counsel, to coordinate and/or share known misinformation and stock legal briefs that are intended to wrongfully and surreptitiously deny payments to EQMD and/or strike EQMD's bills from Michigan No-Fault actions in Michigan trial courts (as evidenced by the strikingly similar argumentation, language, typography, and/or appearance of legal briefs and of denial language).

## STATE FARM AND ITS AGENTS

37.    State Farm, through Scarfone, and/or Scarfone on behalf of State Farm, has made the following statements against EQMD, dating back to at least the *Harbi* matter. (**Exhibit 5 – *Harbi* Motion for Summary Disposition**).  Examples of defamatory statements made in its Motion in the *Kelsey* matter are set forth below. (**Exhibit 6 – *Harbi* Motion for Summary Disposition**).

   a. "Because it [sic] not licensed for pharmaceutical involvement, EQMD's alleged services/products are unlawful and not reimbursable in this case." (**Ex. 6, pg 6**).

   b. "EQMD is practicing medicine without the proper licensing." *Id.* at pg 9

   c. "because EQMD is not licensed for any type of pharmaceutical involvement in Michigan, its alleged products/services are unlawful and not reimbursable as a No Fault benefit. *Id.* at pg 4

16

      d.  "EQMD, Inc. is (in the least) a Wholesale Distributor because it is 'suppl[ying]' or 'distribut[ing]' or 'offer[ing] for sale' medication to 'other persons' for 'dispensing.'" *Id.* at pg 10.

38.    State Farm has recently instructed and/or authorized other firms such as Hackney Grover PC and its house counsel Kent E. Gorsuch & Associates to spread its campaign of defamatory statements against EQMD.

39.    State Farm. through its house counsel, Kent E. Gorsuch & Associates, made the following statements in a dispositive motion electronically filed with the Wayne County Circuit Court in *Medrano v State Farm*. (**Exhibit 7 – *Medrano* Motion for Summary Disposition**).  These statements were also distributed to the parties and representative counsel by e-service.

      a.  "because EQMD is not licensed for any type of pharmaceutical involvement in Michigan, its alleged products/services are unlawful and not reimbursable as a No Fault benefit." (**Ex 7, pg 3**).

      b.  "[EQMD is] not properly licensed to dispense medications and thus the 'treatment,' provided to Plaintiff was not lawfully rendered." *Id.* at pg 5. (emphasis in original).

      c.  "EQMD has a claim for prescription medications in this case; however, according to Michigan's LARA website, EQMD, Inc. is not licensed to conduct business in Michigan and has never filed any of the necessary corporate paperwork in order to do so." *Id.*

      d.  "EQMD, Inc. not only failed to comply with the LARA requirements of filing corporate paperwork, but it is also NOT licensed in the State of Michigan for any type of pharmaceutical involvement. Because it not licensed for pharmaceutical involvement, EQMD's alleged services/products are unlawful and NOT reimbursable in this case." *Id.* at pg 6. (emphasis in original).

e. "Because EQMD, Inc. is not properly licensed to deal in pharmaceuticals, its services/products are unlawful and therefore, not reimbursable as a No Fault Benefit." *Id.* at pgs 9-10.

f. "EQMD is practicing medicine without the proper licensing." *Id.* at pg 9.

g. "EQMD, INC is still be considered either a manufacturer or wholesale distributor, both of which are still required to be licensed in Michigan." *Id.* at pg 9.

40.   Recently, State Farm. through Hackney Grover PC made the following statements in a dispositive motion electronically filed with he Wayne County Circuit Court in *Abushawish v State Farm*. (**Exhibit 8 – *Abushawish Motion for Summary Disposition***).  These statements were also distributed to the parties and representative counsel by e-service.

a. "Because it [sic] not licensed for pharmaceutical involvement, **EQMD's alleged services/products are unlawful and NOT reimbursable in this case.**" (**Ex. 8, pg 5**)(emphasis in original).

b. "EQMD is not properly licensed." *Id.* at pg 6.

c. "EQMD is practicing medicine without the proper licensing." *Id.* at pg 8.

d. "EQMD is at the very least a Wholesale Distributor because it is 'suppl[ying]' or 'distribut[ing]' or 'offer[ing] for sale' medication to 'other persons' for 'dispensing.'" *Id.* at pg 9.

e. "Because EQMD, Inc. is not properly licensed to deal in pharmaceuticals, its services/products are unlawful under MCL 500.3157 and, therefore, not reimbursable as a No Fault Benefit." *Id.* at pg 9.

18

      f.   "Because EQMD, Inc. is not properly licensed to deal in pharmaceuticals, its services/products are unlawful under MCL 500.3157 and, therefore, not reimbursable as a No Fault Benefit." *Id.* at pg 10.

41.    EQMD has received communications from patients' attorneys refusing to collect their billing and/or attempting to not collect EQMD bills when they are part of an action for unpaid No-Fault benefits.

42.    Prior civil proceedings in which EQMD has had notice of the hearing, been procedurally permitted to respond to the misleading and baseless allegations in State Farm and/or Scarfone's dispositive motions regarding EQMD billings have terminated in favor of EQMD.

43.    State Farm knew from information submitted by EQMD, deposition testimony of Gregory May, LARA BPL documentation, and/or the Order from *Al-Abdullah* (**Ex. 4**) which was the first time that a Michigan trial court ruled on the EQMD issue as a matter of law after EQMD obtained and produced the redacted LARA BPL complaint and findings, EQMD was not violating the Michigan Public Health Code, but proceeded to employ aggressive and improper tactics to seek dismissals of EQMD billings without adequate due process.

## State Farm's Depositions of Gregory May - and Subsequent Activities

44.    On July 10, 2018, Attorney John Hohmeier of Scarfone took Gregory

May's deposition in the matter of *Kina v State Farm*, Wayne County Circuit

Court case number 18-000913-NF. (**Exhibit 9 – May Transcript –** *Kina*).

45.    That upon information and belief, State Farm provided Mr. Hohmeier

with certain questions to ask and/or information to obtain from the deponent,

and reviewed the deposition transcript after the deposition, which contained

testimony that EQMD does not handle drugs.

46.    On November 4, 2019, Attorney Lynn Geist of Hackney Grover PC took

Gregory May's deposition in the matter of Abushawish et. al. v State Farm,

Wayne County Circuit Court case number 18-009807-NF. (**Exhibit 14 – May**

**Transcript –** *Abushawish*).

47.    Upon information and belief, State Farm provided Ms. Geist with certain

questions to ask and/or information to obtain from the deponent and State

Farm reviewed the deposition transcript after the deposition, which contained

testimony that EQMD does not handle drugs.

48.    State Farm has sought to eliminate pharmacy management

organizations from the Michigan No-Fault arena since 2015 or earlier;

Scarfone has marketed the legal service of eliminating pharmacy management

organizations directly to State Farm.  See e.g. Marcus PRICE, Plaintiff, and

INFINITE STRATEGIC INNOVATIONS, INC., Intervening Plaintiff, v. State Farm Mutual Automobile Insurance Company, Defendant., 2015 WL 11004758 (Wayne County Circuit Court).

## Liberty, Safeco and Their Agents

49.     One of the many cases that Liberty Mutual has filed a Motion for Summary Disposition alleging that EQMD is in violation of the Public Health Code is *Teisha Jones v Liberty Mutual*.

50.     In this matter, after Liberty Mutual stipulated to allowed EQMD to intervene as a party plaintiff, the trial court entered an Order allowing intervention.

51.     Through the course of discovery EQMD submitted written discovery requests to Liberty Mutual.

52.     Liberty Mutual provided responses on or about October 9, 2019. (**Exhibit 10 – Liberty Mutual Discovery Responses**).

53.     That on or about October 9, 2019, through these discovery responses, endorsed by a representative of Liberty Mutual and reviewed and submitted through the efiling/eservice system by house counsel for Liberty Mutual, Law Offices of Christine Greig, Liberty Mutual confirmed that it did not have any evidence that EQMD was violating the Michigan Public Health Code as set forth herein:

a. Request No. 15 requested that Liberty Mutual "provide any proofs showing that EQMD, Inc.'s website has made any legal offer to LIBERTY MUTUAL … and/or it's insured regarding this claim." Liberty Mutual responded "Defendant does not have possession of documents pertaining to this request."

b. Request No. 16 requested that Liberty Mutual "provide any proofs showing that EQMD, Inc. qualifies as a Manufacturer under the Michigan Public Health Code."  Liberty Mutual responded "Defendant does not have possession of documents pertaining to this request."

c. Request No. 17 requested that Liberty Mutual "provide any proofs showing that EQMD, Inc. qualifies as a Wholesale Distributor under the Michigan Public Health Code."  Liberty Mutual responded "Defendant does not have possession of documents pertaining to this request."

d. Request No. 18 requested that Liberty Mutual "provide any proofs showing that EQMD, Inc. qualifies as a Pharmacy under the Michigan Public Health Code."  Liberty Mutual responded "Defendant does not have possession of documents pertaining to this request."

e. Request No. 19 requested that Liberty Mutual "provide any proofs showing that EQMD, Inc. falls under any category within the Michigan Public Health Code that would require it to obtain a professional license." Liberty Mutual responded "Defendant does not have possession of documents pertaining to this request."

f. Request No. 20 requested that Liberty Mutual "provide any proofs showing that EQMD, Inc. supplied, distributed, and/or offered medications for sale to Liberty Mutual or the subject insured." Liberty Mutual responded "Defendant does not have possession of documents pertaining to this request."

54.    Liberty Mutual *&* Safeco had knowledge of the results of the LARA BPL

determination and therefore, had credible information that EQMD was not

violating the Michigan Public Health Code.

55.    There was an absence of factual or legal basis for filing Motions for

Summary Disposition against EQMD in trial court cases, including, but not

limited to *Waldron* and *Jones*.

56.    There was also no factual or legal basis for the filing Motions for

Summary Disposition against EQMD in trial court cases, including, but not

limited to *Liberty Mutual & Safeco v EQMD* in Oakland County Circuit Court

57.    Liberty Mutual and Safeco have, through their house counsel, the Law

Offices of Christine Greig, promoted a forced legal synthesis – that EQMD was

allegedly conducting unlawful pharmaceutical activities - without regard for

the mere fact that EQMD is not violating the Michigan Public Health Code

and that EQMD does not require a professional license under the Michigan

Public Health Code according to the administrative agency charged with

analyzing the Michigan Public Health Code, the LARA BPL.

58.    Liberty Mutual *&* Safeco had actual knowledge from information

submitted by EQMD, deposition testimony of Gregory May, LARA BPL

documentation, and/or the Order from *Al-Abdullah* (**Ex. 4**)(which was the

first time that a Michigan trial court ruled on the EQMD issue as a matter of

law after EQMD obtained and produced the redacted LARA BPL complaint and

findings), that EQMD was not violating the Michigan Public Health Code, but Liberty Mutual & Safeco proceeded to employ aggressive and improper tactics to seek dismissals of EQMD billings without adequate due process.

59.     Despite not having in its possession, any documents relating to the applicability of the Michigan Public Health Code to EQMD, Liberty Mutual, and its affiliate Safeco filed a baseless and accusatory three count lawsuit against EQDM in the Oakland County Circuit Court bearing the case number 2019-177911-CZ. (**Exhibit 11 – Liberty Mutual & Safeco Complaint & Summons**).

60.     This lawsuit was filed by an attorney at the Law Office of Christine Greig, Walter J. Fitzgibbons who indicated that there were "NO PRIOR CASES" on the Complaint; the Summons indicated "[t]here is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint;" and the Complaint cites "fraudulent and unlawful" actions and refences a number of "claims."

61.     EQMD is aware of a number of currently litigated claims, where the Law Offices of Christine Greig, house counsel for Liberty Mutual, is making similar unfounded allegations regarding EQMD's compliance with the Michigan Public Health Code, including but not limited to *Jones*, *Waldron*, *Smith* and the recent fraud lawsuit against EQMD in the Oakland County Circuit Court.

62.    Defendants have filed and are expected to file or continue filing variations of a boilerplate legal brief replete with known falsehoods in an effort to dismiss EQMD's bills from first-party No-Fault actions in Michigan state trial courts in a manner which denies EQMD any notice or opportunity to be heard or defend itself.

63.    Defendants typically file these types of motions into cases where EQMD is not a party, but claims an interest -  as Motions for Summary Disposition, and on at least one occasion have sought to file a Motion in Limine to dismiss EQMD's bills.

64.    These motions adversely affect EQMD's property interests insomuch as they improperly influence and mislead trial court judges into improperly disposing of EQMD's claims; effectively precluding EQMD's ability to properly use the legal process to recover the account receivables against the insurance companies as opposed to the insured/injured party.

65.    These motions and other court filings are signed by Defendants' agents under M.C.R. 1.109(E)(2) and filed with the court with the intent that the courts rely upon the assertions therein.

66.    These court filings are, upon information and belief, served upon the parties to the litigation, but upon information and belief, Defendants have never served a copy of these motions on EQMD.

67.    Because EQMD is not served with these motions, often, EQMD's claims are extinguished without EQMD's knowledge.

68.    Oftentimes these motions come to the attention of EQMD (through EQMD scouring the court websites for litigation) with enough time for Plaintiff to respond, but without intervention, many courts will not entertain argument.

69.    In such cases, Defendants are quick to point out to the courts that because EQMD has not yet intervened, they have no standing to object or otherwise respond to Defendants' motions and the relief sought.

70.    Once EQMD moves the courts for the ability to intervene, Defendants then object to EQMD's request for intervention for the reason that EQMD's claims have already been dismissed!

71.    Frequently, EQMD is prohibited from even defending at oral argument attending because the bills have already been dismissed without EQMD being notified or represented.

72.    As a result of Defendants' conduct in manipulating the court proceedings and shifting the liability for prescription medications from insurance company back to injured patient, hundreds of Michigan insureds and/or claimants have become responsible for unpaid billings for medications that EQMD is responsible for collecting.

73.    These insureds and/or claimants may face collections that adversely affect their credit ratings and/or litigation as EQMD has not waived any of its rights with respect to its account receivables.

## COUNT I – "RICO"  – 18 U.S.C. §1961 et. seq.

1.   Plaintiff incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

2.   Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 USC §1961(3).

3.   Each Defendant violated 18 USC §1962(c) by the acts described in the prior paragraphs, and further described below.

4.   The Enterprise. Defendants State Farm, Farm Bureau, and Liberty Mutual, together with 1) the law firms, 2) one or more officers, and/or agents of the law firms, form an association-in-fact for the common and continuing purpose described herein and constitute an enterprise within the meaning of 18 USC §1961(4) engaged in the conduct of their affairs through a continuing pattern of racketeering activity.  The members of the enterprise functioned as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activity. There may also be other members of the enterprise who are unknown at this time.

27

5.  Alternatively, the law-firm entities each constitute a separate enterprise within the meaning of 18 USC §1961(4).

6.  Each defendant has engaged in an open-ended pattern of racketeering activity through certain predicate acts extending from April 2018 to and through the present day, that pose a threat of continuing future criminal conduct, and have affected interstate commerce.

7.  The predicate acts, as more fully detailed herein, constitute:

   a. *18 USC §1341 - Mail Fraud.*  Each defendant devised a scheme to defraud as more fully described herein, and executed the scheme using the mail or causing it to be used, and acted with the intent to defraud; and

   b. *18 USC §1343 - Wire Fraud.* Each defendant devised a scheme to defraud by means of false or fraudulent pretenses and representations and caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings,  for the purpose of executing such scheme.

8.  Each defendant has violated RICO by filing litigation documents containing material representations known by Defendants to be false, and made with the intent that the Courts should rely upon such

misrepresentations to Plaintiff's detriment; Plaintiff having suffered injury in fact as a result.

9.  Many of the filings and representations were made without notice to EQMD, denying EQMD the opportunity to be legally represented in the actions, and denying EQMD the due process of a right to be heard before a legal determination was made as to the lawfulness of its operations and its protected property interests.

10. As the direct result of Defendants' conduct, Plaintiff has suffered economic and other harms exceeding $75,000.00.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award actual, economic and exemplary damages, along with declaratory and injunctive relief, and such other relief deemed equitable and just by this Honorable Court.

## COUNT II – 42 USC 1985 (3) – Conspiracy to Interfere with Civil Rights

11.  Plaintiff adopts and incorporates by reference the allegations contained in the foregoing paragraphs with the same effect as if herein fully set forth.

12. Each Defendant conspired to cause a deprivation of the equal privileges and immunities afforded to EQMD under the law when they caused courts to rely upon fraudulent misrepresentations, ultimately violating Plaintiff's Fourth Amendment rights as follows:

    a. EQMD's right to be secure in its property and free from

       deprivation of the same without due process of law.

13. Each Defendant has caused state actors to extinguish EQMD's property

interests without due process of law by presenting facts known to be false to

the courts.

14. Defendants have conspired to prevent civil due process for EQMD

accounts, frequently preventing a fair hearing on the merits and/or a fair

amount of minimal discovery by rushing busy state trial courts into deciding

the lawfulness of EQMD's business practices without notice to EQMD.

15. Defendants are aware that EQMD claims civil due process deficiencies

in Defendants' activities related to EQMD billings, yet Defendants continue to

conspire to interfere with EQMD's civil due process and property rights,

despite being put on notice. *See e.g.* **Exhibit 12 - May 2019 letters**.

16. As the direct result of Defendants' conduct, Plaintiff have suffered

economic and other harms exceeding $75,000.00.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court

award actual, economic and exemplary damages, along with declaratory and

injunctive relief, and such other relief deemed equitable and just by this

Honorable Court.

### COUNT III Declaratory Judgment – 28 USC § 2201 (a)

17. Plaintiff adopts and incorporates by reference the allegations contained in the foregoing paragraphs with the same effect as if herein fully set forth.

18. This Honorable Court is empowered to declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

19. Plaintiff seeks a declaration pursuant to the Federal Declaratory Judgment Act, 28 USC § 2201, for the purpose of determining an actual controversy between the parties, construing the rights and legal obligations arising under the Michigan Public Health Code and the Michigan No-Fault Statute.

20. As the direct result of Defendants' conduct, Plaintiff has suffered economic and other harms exceeding $75,000.00.

WHEREFORE, Plaintiff seeks a declaration that Plaintiff has no licensing obligations under the Michigan Public Health Code in connection with their pharmaceutical management business activity, and that Plaintiff has standing as it claims an interest in the No-Fault benefits that are at issue in connection with incidences which are the subject of certain enumerated pending No-Fault Complaints against Defendants.

## COUNT IV – Injunction – FRCP 65

21. Plaintiff adopts and incorporates by reference the allegations contained in the foregoing paragraphs with the same effect as if herein fully set forth.

22.     FRCP 65 authorizes the issuance of preliminary injunctions and temporary restraining orders.

23.     Plaintiff will suffer irreparable injury unless defendants are enjoined from presenting false "facts" to Michigan courts.

24.     It is also in the interest of the public, to wit, the Michigan insureds, to enjoin Defendants from abusing the internal investigation and external litigation processes to shift the liability for reasonable and necessary charges for treatment related to auto accidents from the insurance company to the victims.

25.     As the direct result of Defendants' conduct, Plaintiff has suffered economic and other harms exceeding $75,000.00.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter its Order enjoining Defendants from alleging or representing to any court, insured, claimant, attorney, person or other entity that EQMD requires a license under the PHC or that EQMD is violating the PHC without any facts to support such claim.

### COUNT V - Fraud Upon the Court

26.     Each Defendant has hired, directed, conspired with and otherwise encouraged and caused officers of the court (non-party law firm employees and agents) to present intentionally false representations of facts directed to the "judicial machinery" itself, as part of a scheme to interfere with the judicial machinery performing the task of impartial adjudication.

27. Each such representation constitutes a positive averment and concealment as Defendants' agents are under a duty to disclose.

28.     Each agent or employee of each non-party law firm is under a duty of candor to the tribunal,[9] i.e., a duty to disclose and has failed in that duty, by intentionally presenting facts that were known to be false when made, willfully blind to the truth, or in reckless disregard for the truth - directly to the Michigan judiciary by way of dispositive motion practice which has had the practical effect of deceiving the courts and causing actual harm to the Plaintiff by way of dismissal of EQMD claims.

29.     Each Defendant has hired, directed, conspired with and otherwise encouraged and caused officers of the court (non-party law firm employees and agents) to prevent Plaintiff from fairly presenting its case or defense by failing to provide any notice of court filings which propose to dispose of

---

[9] See MRPC 3.3

Plaintiff's claims and shift the cost of prescription medications otherwise compensable as a No-Fault benefit directly back to the consumer.

30.     This scheme involves the fabrication of evidence by Defendants in which their agents are implicated and one which seriously affects the integrity of the normal process of adjudication.

31. As the direct result of Defendants' conduct, Plaintiff has suffered economic and other harms exceeding $75,000.00.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award actual, economic and exemplary damages, along with declaratory and injunctive relief, and such other relief deemed equitable and just by this Honorable Court.

## STATE CLAIMS
## COUNT VI – Abuse of Process

32.     Plaintiff adopts and incorporates by reference the allegations contained in the foregoing paragraphs with the same effect as if herein fully set forth.

33.     Each Defendant has used the process of litigation for an ulterior purpose; not for a fair and impartial adjudication of the claims of EQMD on the merits, but to influence the courts to dismiss the claims of EQMD for reasons known by Defendants to be false, which is an improper and perverted

use of the process, neither warranted nor authorized by the regular prosecution of the proceeding.

34.     Defendants had a least one ulterior purpose in alleging that EQMD required a license under the Michigan Public Health Code in order for EQMD's bills to be lawfully rendered under the Michigan No-Fault Act.

35.     Defendants' list of ulterior purposes include, but are not limited to the following:

  a.  To reduce the claims payouts;
  b.  To save money by any means necessary;
  c.  To reduce the cost of providing auto insurance coverage;
  d.  To increase profits;
  e.  To hamper their insured and/or claimant's abilities to obtain medications related to injuries sustained in their respective motor vehicle accident;
  f.  To directly or indirectly cause insureds and/or claimants from seeking additional medical treatment with the physician groups that work with EQMD;

36.     As the result of Defendants' conduct, Plaintiff has suffered economic and other harms exceeding $75,000.00.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award actual, economic and exemplary damages, along with declaratory and injunctive relief, and such other relief deemed equitable and just by this Honorable Court.

## <u>COUNT VII - GENERAL CIVIL CONSPIRACY</u>

37. Plaintiff adopts and incorporates by reference the allegations contained in the foregoing paragraphs with the same effect as if herein fully set forth.

38.     Defendants have engaged in concerted actions in order to conspire to unlawfully harm EQMD in derogation of MCL 750.157a.

39.     Each Defendant and each non-party corporation are involved in the conspiracy.

40.     Defendants are working together directly, indirectly, and/or through their employees, agents, and/or counsel, to commit a legal act (adjudication of EQMD claims) in an illegal manner (fraud upon the court).

41. This conspiracy also includes the coordination and/or sharing of information (briefs, templates for court filing) intended to wrongfully use the state civil litigation process in an effort to economically and reputationally harm EQMD by having EQMD's bills stricken from Michigan No-Fault actions in Michigan trial courts as "illegal" or "non-compensable."

42.     Defendants are sharing stock legal briefs to advance the conspiracy, as evidenced by the strikingly similar argumentation, language, typography, and/or appearance of legal briefs and of denial language.

43.     Defendants have coordinated verbally and through written correspondence to unify their positions and/or arguments in an effort to conspire to inflict fiscal injury to Plaintiff.

44.     Defendants took overt actions including, but not limited to the following:

   a. Knowingly, recklessly, wantonly, maliciously and/or negligently contributing to or causing the violation of EQMD's civil due process rights by failing to provide legal notice to EQMD of legal actions are being taken that may affect the rights of EQMD;

   b. Promoting a legal fallacy throughout the Michigan Judicial System that the business activities of EQMD violate the Public Health Code for want of a "pharmaceutical license" and that the claims of EQMD are prohibited by No-Fault Act as being "unlawfully rendered;"

   c. Continuing to disseminate misinformation and organize efforts to harm Plaintiff fiscally through underhanded litigation tactics, even after LARA indicated that EQMD was not violating the Michigan Public Health Code; and

   d. Continuing to knowingly make material misrepresentations to Michigan Courts, even after receiving sworn testimony contradicting the false allegations.

45.     Such conduct may save money for the insurance companies, but such misconduct not only violates a lawyer's duties of good faith and fair-dealing and candor to the tribunal, but also results in the very grave offense of bringing the administration of justice into disrepute, by enabling insurance companies to shirk their obligations under contracts with their insured,

and/or their statutory obligations under the No-Fault, thereby exposing the insured individual to personal liability for the hundreds of dollars of unpaid bills/PIP benefits.

46.      As the result of Defendants' conduct, Plaintiff has suffered economic and other harms exceeding $75,000.00.[10]

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award actual, economic and exemplary damages, along with declaratory and injunctive relief, and such other relief deemed equitable and just by this Honorable Court.

<u>**JURY DEMAND**</u>

Plaintiff demands a trial by jury of all issues so triable pursuant to F.R.C.P 38.

Respectfully Submitted,

THE MICHIGAN LAW FIRM, PC

/s/ RACINE MILLER
RACINE MILLER (P72612)
DONALD TEICHMAN (P37817)
Attorneys for Plaintiff
2254 Cole Street, Suite B
Birmingham, MI 48009
Phone: 844.464.3476
Fax: 248.480.0906

---

[10] Outstanding balances owed by Defendants are attached hereto as **Exhibit 15**.

Dated: December 16, 2019