# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

EQMD, INC.,

      Plaintiff,

v.

FARM BUREAU GENERAL
INSURANCE COMPANY OF
MICHIGAN, FARM BUREAU
MUTUAL INSURANCE COMPANY
OF MICHIGAN, LIBERTY MUTUAL
FIRE INSURANCE COMPANY,
LIBERTY MUTUAL GENERAL
INSURANCE COMPANY, LIBERTY
MUTUAL INSURANCE
CORPORATION, SAFECO
INSURANCE COMPANY OF
ILLINOIS, STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

      Defendants.

Case No. 4:19-cv-13698-SDD-RSW

Judge Stephanie Dawkins Davis
Magistrate Judge R. Steven Whalen

**STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY'S MOTION TO
DISMISS PURSUANT TO FED. R.
CIV. P. 12(b)(1) AND 12(b)(6)**

**ORAL ARGUMENT REQUESTED**

Racine M. Miller (P72612)
Donald Teichman (P37817)
THE MICHIGAN LAW FIRM, PC
2254 Cole Street, Suite B
Birmingham, MI 48009
Phone: 844.464.3476
Fax: 248.480.0906
racine@themichiganlawfirm.com
*Attorneys for Plaintiff*

Gregory L. Curtner (P12414)
Matthew P. Kennison (P79653)
RILEY SAFER HOLMES
& CANCILA LLP
121 W. Washington St., Suite 402
Ann Arbor, MI 48104
Phone: 734.773-4911
Fax: 734.773-4901
gcurtner@rshc-law.com
mkennison@rshc-law.com
*Attorneys for State Farm Mutual*
*Automobile Insurance Company*

Stephen P. Brown (P48847)
PLUNKETT COONEY
38505 Woodward Ave., Suite 100
Bloomfield Hills, MI  48304
(248) 901-4000
*Attorneys for Defendants*
*Liberty Mutual Fire Insurance*
*Company; Liberty Mutual General*
*Insurance Company; Liberty Mutual*
*Insurance Corporation; and Safeco*
*Insurance Company of Illinois*

## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION TO DISMISS EQMD'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

Defendant State Farm Mutual Automobile Insurance Company ("State Farm"), by its attorneys, moves the Court pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiff EQMD, Inc's ("EQMD") Complaint for Declaratory and Other Relief ("Complaint") with prejudice. In

support of its motion, State Farm states as follows:

1.      This Court should dismiss EQMD's Complaint under Federal Rule of Civil Procedure 12(b)(6) because all of EQMD's claims are barred by *Noerr-Pennington* immunity: all of the conduct forming the basis of each of EQMD's claims is core petitioning of the government which is protected by the First Amendment.

2.      Even aside from *Noerr-Pennington* immunity, each of EQMD's individual claims fails on its own terms and should also be dismissed for failure to state a claim upon which relief can be granted.

3.      First, EQMD has not adequately pleaded the essential elements of its Racketeering Influences and Corrupt Organizations Act ("RICO") claim (Count I), 18 U.S.C. §1961 et seq. Specifically, EQMD fails to allege an enterprise separate and apart from the supposed racketeering activity and fails to allege any cognizable predicate act.

4.      EQMD also fails to allege a plausible violation of 42 U.S.C. §1985(3) (Count II), as it has not pleaded (and cannot plead) that it is a member of a protected class, that the supposed conspiracy is based on a discriminatory motive, that there is an underlying constitutional violation, or that there are facts sufficient to support its dubious allegations of a conspiracy. For each of these reasons, the conspiracy to violate civil rights claim should be dismissed.

5.     EQMD's claim for declaratory relief under the Federal Declaratory Judgment Act ("FDJA") (Count III) should be dismissed because, after dismissal of Counts I and II, no plausible federal action supports federal question jurisdiction, nor is there diversity jurisdiction.  Therefore, no subject matter jurisdiction exists to hear EQMD's claim under the FDJA. The FDJA claim should also be dismissed because EQMD lacks standing to assert it.

6.     EQMD's injunction (Count IV) and fraud upon the court (Count V) claims are not independent causes of action. Moreover, to the extent EQMD might be entitled to any relief under a fraud-on-the-court theory, it must be brought in the court or courts where the alleged fraud occurred (*i.e.*, in the Michigan state courts, according to EQMD's allegations).  EQMD cannot assert such theory in a separate federal court action to collaterally attack a state court proceeding.

7.     EQMD's abuse of process claim (Count VI) fails to plead any plausible theory of relief because EQMD fails to adequately allege the two required elements: an ulterior purpose and an act in the use of the process which is improper in the regular prosecution of the proceeding.

8.     Finally, EQMD's general civil conspiracy claim (Count VII) fails as a matter of law because there is no valid underlying tort, a requirement of conspiracy claims under Michigan law. In addition, EQMD has failed to plead that the defendant insurers acted with an illegal purpos.

3

9.     The undersigned certifies that on February 20, 2020, counsel communicated with EQMD's counsel of record via phone, explaining the nature of the relief sought by this motion and seeking concurrence. Counsel for State Farm articulated the bases for this Motion, as explained in the preceding paragraphs and more fully in the accompanying brief. Counsel for EQMD denied concurrence, taking the following positions as to each issue in controversy:

   a.  EQMD disagreed that *Noerr-Pennington* can bar EQMD's claims, but did not provide further factual or substantive reasons for this position on the call;

   b.  EQMD believes the act of filing briefs with alleged material misrepresentations is sufficient to establish the predicate acts of mail and wire fraud, and further that there is sufficient factual allegations of a conspiracy to satisfy the association-in-fact element;

   c.  EQMD believes that it has alleged enough factual material to make out a conspiracy to deprive EQMD of its property interests, that it has enough factual allegations to satisfy the discriminatory animus element, and further that it constitutes a "class of one" sufficient to satisfy the protected class element;

   d.  EQMD disagrees that the injunction and fraud-on-the-court counts are not independent causes of action, but did not provide further factual or

4

substantive reasons for this position on the call;

e.  EQMD disagrees that it does not have standing to bring its claim for declaratory judgment action, because it claims that it has standing through the freedom to contract with the providers and to obtain assignments from patients;

f.  EQMD believes that its abuse of process claim is viable because it has alleged that the defendant insurers made material representations to courts, intended to have those courts rely on them, and then secured orders that take away EQMD's due process rights;

g.  EQMD believes it has pleaded the elements of civil conspiracy, that paragraphs 40 and 41 provide the factual allegations sufficient to support a plausible inference of conspiracy, and that there are viable underlying torts of abuse of process and fraud-on-the-court to support this claim.

10.    Accordingly, all of the above issues remain unresolved.

WHEREFORE, for the foregoing reasons, and as stated more fully in the supporting brief, State Farm respectfully requests that this Court grant State Farm's motion, dismiss the Complaint in its entirety with prejudice, and grant any other further relief the Court deems proper.

Dated: February 25, 2020                    Respectfully submitted,


                                            */s/ Gregory L. Curtner*
                                            Gregory L. Curtner (P12414)
                                            Matthew P. Kennison (P79653)
                                            RILEY SAFER HOLMES & CANCILA LLP
                                            121 W. Washington St., Suite 402
                                            Ann Arbor, MI 48104
                                            Phone: 734.773-4911
                                            Fax: 734.773-4901
                                            gcurtner@rshc-law.com
                                            mkennison@rshc-law.com
                                            *Attorneys for State Farm Mutual Automobile*
                                            *Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that on February 25, 2020, he caused a true and correct copy of the foregoing document to be served using the Court's electronic filing system, which will send electronic notification of such filing to all parties that have appeared in this action.

*/s/ Gregory L. Curtner*
Gregory L. Curtner (P12414)

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

EQMD, INC.,

       Plaintiff,

v.

FARM BUREAU GENERAL
INSURANCE COMPANY OF
MICHIGAN, FARM BUREAU
MUTUAL INSURANCE COMPANY
OF MICHIGAN, LIBERTY MUTUAL
FIRE INSURANCE COMPANY,
LIBERTY MUTUAL GENERAL
INSURANCE COMPANY, LIBERTY
MUTUAL INSURANCE
CORPORATION, SAFECO
INSURANCE COMPANY OF
ILLINOIS, STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

       Defendants.

Case No. 4:19-cv-13698-SDD-RSW

Judge Stephanie Dawkins Davis
Magistrate Judge R. Steven Whalen

**STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY'S BRIEF IN SUPPORT
OF ITS MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P.
12(b)(1) AND 12(b)(6)**

**ORAL ARGUMENT REQUESTED**

Racine M. Miller (P72612)
Donald Teichman (P37817)
THE MICHIGAN LAW FIRM, PC
2254 Cole Street, Suite B
Birmingham, MI 48009
Phone: 844.464.3476
Fax: 248.480.0906
racine@themichiganlawfirm.com
Attorneys for Plaintiff

Gregory L. Curtner (P12414)
Matthew P. Kennison (P79653)
RILEY SAFER HOLMES
& CANCILA LLP
121 W. Washington St., Suite 402
Ann Arbor, MI 48104
Phone: 734.773-4911
Fax: 734.773-4901
gcurtner@rshc-law.com
mkennison@rshc-law.com
*Attorneys for State Farm Mutual
Automobile Insurance Company*

Stephen P. Brown (P48847)
PLUNKETT COONEY
38505 Woodward Ave., Suite 100
Bloomfield Hills, MI  48304
(248) 901-4000
*Attorneys for Defendants
Liberty Mutual Fire Insurance
Company; Liberty Mutual General
Insurance Company; Liberty Mutual
Insurance Corporation; and Safeco
Insurance Company of Illinois*

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S
BRIEF IN SUPPORT OF ITS MOTION TO DISMISS EQMD'S
<u>COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)</u>**

# **TABLE OF CONTENTS**

Page

CONCISE STATEMENT OF ISSUES PRESENTED ........................................... vii

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE
RELIEF SOUGHT ................................................................................................ viii

INTRODUCTION ...................................................................................................1

EQMD'S COMPLAINT .........................................................................................2

ARGUMENT ...........................................................................................................5

I.     LEGAL STANDARDS ...............................................................................5

II.    *NOERR-PENNINGTON* IMMUNITY BARS EQMD'S CLAIMS. ...............5

III.   EQMD HAS FAILED TO STATE ANY CLAIM UPON WHICH
       RELIEF CAN BE GRANTED. .......................................................................8

       A.     The RICO Claim Does Not Allege the Essential Elements. .................8

              i.     Insufficient allegations of an enterprise. .....................................8

              ii.    Insufficient allegations of a predicate act. .................................11

       B.     EQMD Has Failed to Plead the Elements of its § 1985(3) Claim. ......13

              i.     EQMD did not plead membership in a protected class. ...........13

              ii.    EQMD did not allege a discriminatory animus. ......................14

              iii.   The Absence of Government Actors also Defeats EQMD's
                     Section 1985 Claim. ...................................................................15

              iv.    EQMD did not allege a valid conspiracy. ................................16

       C.     The Court Lacks Jurisdiction Over EQMD's Federal Declaratory
              Judgment Act Claim. ........................................................................17

       D.     Injunction and Fraud on the Court Claims Are Not Independent

        Causes of Action. ...............................................................................20

E.     The Abuse of Process Claim Fails as a Matter of Michigan Law. .....22

F.     EQMD Has Not Alleged a Conspiracy Under Michigan Law. ..........23

CONCLUSION .......................................................................................................25

# TABLE OF AUTHORITIES

Page

**CASES**

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365 (2003) .................................................................23

*Almanza v. United Airlines, Inc.*, 851 F.3d 1060 (11th Cir. 2017)...........................9

*Arsan v. Keller*, 784 F. App'x 900 (6th Cir. 2019) ......................................... 16, 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................5

*Auburn Medical Center, Inc. v. Andrus*, 9 F. Supp. 2d 1291 (M.D.Ala.1998) .......12

*Ball Fed. Nat'l Mortg. Ass'n*, No. 16-11475, 2016 WL 4702585 (E.D. Mich. Sept. 8, 2016) .................................................................11

*Barnes Found. v. Twp. of Lower Merion*, 927 F. Supp. 874 (E.D. Pa. 1996) ..........6

*Bartell v. Lohiser,* 215 F.3d 550 (6th Cir. 2000) ......................................14

*Bartlett v. Washington*, No. 19-1285, 2019 WL 6522168 (6th Cir. Dec. 4, 2019).................................................................15

*Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*, 229 F.3d 1135 (2d Cir. 2000) .................................................................6

*Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776 (6th Cir. 2000)...................10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)......................................5

*Bocanegra v. Stacey*, No. 10-CV-13749, 2011 WL 4448979 (E.D. Mich. Sept. 26, 2011) .................................................................11

*Boyle v. United States*, 556 U.S. 938 (2009) ............................................8

*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993) .........................16

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)..................................9

*Brokaw v. Mercer Cty.*, 235 F.3d 1000 (7th Cir. 2000)..........................................16

*California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972) ...........7

*Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776 (6th Cir. 2007) .............6, 7

*Covenant Med. Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 500 Mich. 191 (2017) .................................................................22

*Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758

F.Supp.2d 153 (E.D.N.Y. 2010) .......................................................12

*Daddona v. Gaudio*, 156 F. Supp. 2d 153 (D. Conn. 2000) ...................12

*Deck v. Engineered Laminates*, 349 F.3d 1253 (10th Cir. 2003) ...........12

*DirecTV, Inc. v. Zink*, 286 F. Supp. 2d 873 (E.D. Mich. 2003)................7

*Doe v. Univ. of Dayton*, 766 F. App'x 275 (6th Cir. 2019) .............. 17, 18

*E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127
     (1961) ......................................................................................6

*Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758 (6th Cir. 2010) .....14

*Feld Entm't Inc. v. Am. Soc. for the Prevention of Cruelty to Animals*, 873
     F.Supp.2d 288 (D.D.C. 2012) ...................................................12

*Followell v. Mills*, 317 F. App'x 501 (6th Cir. 2009) .............................21

*Frank v. D'Ambrosi*, 4 F.3d 1378 (6th Cir.1993) ....................................11

*Gabovitch v. Shear*, 70 F.3d 1252 (1st Cir. 1995)....................................12

*Goldsmith v. Moskowitz*, 74 Mich. App. 506 (1977)................................24

*Goleta Nat'l Bank v. O'Donnell*, 239 F. Supp. 2d 745 (S.D. Ohio 2002)......... 18, 20

*Goryoka v. Quicken Loan, Inc.*, 519 Fed. App'x 926 (6th Cir. 2013).....................20

*Griffith ex rel Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521; 697
     NW2d 895 (2005) ...................................................................19

*Hahn v. Star Bank*, 190 F.3d 708 (6th Cir. 1999)....................................14

*In re Flint Water Cases*, 384 F. Supp. 3d 802 (E.D. Mich. 2019)................... 13, 14

*Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip
     Morris Inc.*, 196 F.3d 818 (7th Cir. 1999) ....................................6

*Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018) .............................................11

*King v. Corp. of U.S. of Am.*, No. 05 CV 72849 DT, 2005 WL 3320866 (E.D.
     Mich. Dec. 7, 2005) ................................................................5

*LaMie v. Wright*, No. 1:12-CV-1299, 2014 WL 1686145 (W.D. Mich. Apr.
     29, 2014) ......................................................................... 21, 22

*LaMothe v. Auto Club Ins. Ass'n*, 214 Mich. App. 577 (1995) ...............22

*Lewis v. Walker*, No. 17-6041, 2018 WL 4348063 (6th Cir. Mar. 15, 2018) .........21

*Local 180 of Intern. Union, United Auto., Aircraft and Agr. Implement
     Workers of America, AFL-CIO v. J. I. Case Co.*, 185 F. Supp. 130 (E.D.

Wis. 1960) ...................................................................................................18

*Luther v. Am. Nat'l Bank of Minn.*, 2012 WL 5471123 (D. Minn. Oct. 11, 2012)...................................................................................................................12

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ...................... 18, 19, 20

*Melton v. Blankenship*, No. 08-5346, 2009 WL 87472 (6th Cir. 2009).......... 11, 12

*Michigan S RR Co. v. Branch & St. Joseph Counties Rail Users Ass'n Inc.*, 287 F.3d 568 (6th Cir.2002)...................................................................................5

*Mir v. Greines, Martin, Stein & Richland*, 676 F. App'x 699 (9th Cir. 2017) ......6, 7

*Moon v. Harrison Piping Supply*, 465 F.3d 719 (6th Cir.2006)................................8

*Nehls v. Hillsdale Coll.*, 65 F. App'x 984 (6th Cir. 2003) ................................ 23, 24

*New Day Farms, LLC v. Bd. of Trustees of York Twp., Ohio*, No. 2:08-CV-01107, 2009 WL 4016480 (S.D. Ohio Nov. 17, 2009)................................................7

*Parsons v. U.S. Dep't of Justice*, 801 F.3d 701 (6th Cir. 2015)................................5

*Partrich v. Farber*, 448 F. App'x 526 (6th Cir. 2011)............................................23

*Pennwalt Corp. v. Zenith Labs., Inc.*, 472 F. Supp. 413 (E.D. Mich. 1979).............7

*Peters v. Fair*, 427 F.3d 1035 (6th Cir. 2005) ................................................ 13, 16

*Petter Investments, Inc. v. Hydro Eng'g, Inc.*, 828 F. Supp. 2d 924 (W.D. Mich. 2011) .................................................................................................18

*Phillips v. Ingham Cty.*, 371 F. Supp. 2d 918 (W.D. Mich. 2005) ........................22

*Raney v. Allstate Ins. Co.*, 370 F.3d 1086 (11th Cir. 2004)...................................12

*Reichenberger v. Pritchard*, 660 F.2d 280 (7th Cir.1981) .......................................7

*Riegler v. Ford Motor Co.*, No. 1:04 CV 1052, 2005 WL 8166991 (N.D. Ohio Nov. 23, 2005)..................................................................................................21

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043 (D.C. Cir. 2012) ........................................................................................9

*Skidmore v. Access Grp., Inc.*, 149 F. Supp. 3d 807 (E.D. Mich. 2015)................20

*Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512 (5th Cir. 2016)..............12

*State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*, No. 14-CV-10266, 2015 WL 13620467 (E.D. Mich. May 1, 2015) .....................................10

*Stern v. United States Gypsum, Inc.*, 547 F.2d 1329 (7th Cir. 1977) .......................7

*Three Lakes Ass'n v. Whiting*, 75 Mich. App. 564 (1977).....................................22

*United Bhd. of Carpenters and Joiners of America, Local 610 v. Scott*, 463 U.S. 825 (1983) ...................................................................................15

*United Food & Commercial Workers Unions & Empl'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013) .............................9

*United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965) ..........................6

*United States v. Turkette*, 452 U.S. 576 (1981) ....................................................8

*VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696 (6th Cir. 2000) ...........9

*VIBO Corp. v. Conway*, 669 F.3d 675 (6th Cir. 2012) ...........................................7

*von Bulow v. von Bulow*, 657 F. Supp. 1134 (S.D.N.Y.1987) ................................12

*Warner v. Greenebaum, Doll & McDonald*, 104 F. App'x 493 (6th Cir. 2004)14, 15

*Weisman v. Charles E. Smith Mgmt., Inc.*, 829 F.2d 511 (4th Cir. 1987)..............21

*Williams v. Jones & Jones Mgmt. Grp., Inc.*, No. CV 14–2179–MMM (JEM), 2015 WL 349443 (C.D. Cal. Jan. 23 2015) ..........................................................7

*Xerox Corp. v. N.W. Coughlin & Co.*, No. 06-CV-14358, 2009 WL 261530 (E.D. Mich. Feb. 4, 2009) .................................................................................24

**STATUTES**

18 U.S.C. § 1341 ...................................................................................................11

18 U.S.C. § 1343 ...................................................................................................11

18 U.S.C. § 1961(4) ...............................................................................................8

22 U.S.C. § 2201 ...................................................................................................18

42 U.S.C. § 1985(3) ...................................................................................... passim

**RULES**

Fed. R. Civ. P 12(b)(1)........................................................................................5, 8

Fed. R. Civ. P 12(b)(6)............................................................................... 5, 8, 9, 10

Fed. R. Civ. P 60 ...................................................................................................21

MCL 333.17748 ..................................................................................................3, 19

MCL 500.3157 .........................................................................................................1

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

Should this Court dismiss this case where: (1) Plaintiff's claims are barred by the *Noerr-Pennington* immunity doctrine, and (2) the claims asserted in the Complaint are not adequately pleaded and do not support standing or any substantive basis for EQMD's claims?

Defendant State Farm says, "yes."

Plaintiff says, "no."

The Court should say, "yes."

# CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT

State Farm relies on the authorities listed below, as well as the additional authorities cited in this Brief in Support of its Motion to Dismiss.

Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 12(b)(6)

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

*Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776 (6th Cir. 2007)

*Boyle v. United States*, 556 U.S. 938 (2009)

*Almanza v. United Airlines, Inc.*, 851 F.3d 1060 (11th Cir. 2017)

*Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776 (6th Cir. 2000)

*Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018)

*Warner v. Greenebaum, Doll & McDonald*, 104 F. App'x 493 (6th Cir. 2004)

*In re Flint Water Cases*, 384 F. Supp. 3d 802 (E.D. Mich. 2019)

*Stricker v. Twp. of Cambridge*, 710 F.3d 350 (6th Cir. 2013)

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)

*Goryoka v. Quicken Loan, Inc*., 519 Fed. App'x 926 (6th Cir. 2013)

*LaMie v. Wright*, No. 1:12-CV-1299, 2014 WL 1686145 (W.D. Mich. Apr. 29, 2014)

*Three Lakes Ass'n v. Whiting*, 75 Mich. App. 564, 573 (1977)

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 384 (2003)

## **INTRODUCTION**

Plaintiff EQMD, Inc. ("EQMD"), a pharmacy management company, claims an interest in personal injury protection benefits under Michigan's No-Fault Act (the "Act") to which EQMD has no legal right. EQMD insists it does not act as a pharmacy or handle or dispense medication or otherwise provide treatment to Michigan patients (and therefore assertedly does not need a pharmacy license to operate its business) while simultaneously arguing insurance companies must reimburse it for its non-pharmacy, non-medical treatment software services as though they constitute "lawfully render[ed] treatment to an injured person" under the No-Fault Act. *See* MCL 500.3157.   EQMD then argues that the defendant insurers have engaged in a "conspiracy" and perpetrated a "fraud on the court" when they successfully argue – through summary disposition motions to state courts in first-party insurance coverage actions – that EQMD's bills are not reimbursable under the Act.

From this dubious proposition, EQMD concocts the present action. EQMD alleges State Farm and the other defendant insurers have violated the Racketeering Influences and Corrupt Organizations Act ("RICO"), engaged in a conspiracy to violate its civil rights, perpetrated fraud, and committed abuse of process and civil conspiracy violations. EQMD also seeks declaratory relief under the Federal Declaratory Judgment Act. All of EQMD's substantive claims are barred by *Noerr-*

*Pennington* immunity, however, because the conduct forming the basis of all of EQMD's claims is petitioning of the government: filing motions in courts, activity absolutely protected by the First Amendment. Further, two of EQMD's counts (injunction and fraud upon the court) are not cognizable causes of action, EQMD lacks standing to claim entitlement to declaratory relief, and its remaining claims fail to state a claim upon which relief can be granted. The Court should dismiss the Complaint for Declaratory and Other Relief (the "Complaint") with prejudice.

## EQMD'S COMPLAINT

EQMD is "a pharmacy management company that works with dispensing practitioners" allegedly "to enable them to more easily manage their orders of medications from properly licensed pharmacies/manufacturers and/or wholesale distributors through the use of EQMD's proprietary software program." Compl. at 5. It insists that "[i]n Michigan, EQMD does not dispense, prepare, carry, store, handle, possess, sell, purchase, repackage, or manufacturer drugs – EQMD merely provides the software, technical support and training for the software, and billing/collection services related to those medications." *Id.* at 6.

Despite conceding that it does not provide medical treatment to patients, EQMD bills for such benefits as if it were a provider of medical treatment and maintains, and seeks a declaration, that it "has legal standing as it claims an interest in the No-Fault benefits that are at issue in connection with incidences" in certain

2

Michigan state court cases. *Id*. at 2-4. EQMD further alleges that State Farm, along with the other insurer defendants (collectively, the "Defendants"), have perpetrated a "fraud" and "conspiracy" in the Michigan state courts relating to such benefits. *Id*. at 4. This supposed conspiracy involves "willfully and intentionally abusing the adversary system to disparage EQMD among the bench and bar" by representing in state court motions that EQMD's bills are not compensable under the No-Fault Act because EQMD does not possess a pharmacy license. *Id.* at 6. EQMD concedes that state courts "frequently enter Orders disposing of EQMD claims." *Id*. at 7.

Confronted with these many adverse rulings, EQMD alleges only an administrative complaint filed on April 19, 2018 with State of Michigan Department of Licensing and Regulatory Affairs Bureau of Professional Licensing Investigations and Inspections ("LARA") against EQMD, and LARA's subsequent letter response. *See id.* at Exs. 1, 3.[1] The administrative complaint states that EQMD "acted as a Pharmacy without the proper licensing as required by MCL 333.17748" and that EQMD "has been acting as a wholesale distributor" of prescription drugs. *Id*. at Ex.1. On February 21, 2019, LARA responded, simply, that "a violation of the Public Health Code could not be established." *Id.* at Ex. 3. EQMD asserts LARA's one-paragraph letter provides "credible information that EQMD was not violating the Michigan Public Health Code," and, in addition, entitles EQMD to a declaration

---

[1] On their face, it is clear that neither involved State Farm.

from this Court that it "has legal standing as it claims an interest in the No-Fault benefits that are at issue in connection with" the state court lawsuits listed in the Complaint. *Id*. at 2, 23, 37.

The Complaint identifies five law firms as "non-party entities affiliated with Defendant State Farm." *Id*. at 10. EQMD alleges that these firms have made "defamatory statements" ***in court filings*** by stating that EQMD's services are not "reimbursable" as a No-Fault benefit because EQMD is "not licensed for pharmaceutical involvement." *See id*. at 16-17. State Farm's lawyers allegedly file motions "replete with known falsehoods in an effort to dismiss EQMD's bills from first-party No-Fault actions in Michigan state trial courts." *Id*. at 25.

EQMD alleges that these supposed tactics by State Farm's counsel "adversely affect EQMD's property interests insomuch as they improperly influence and mislead trial court judges into improperly disposing of EQMD's claims; effectively precluding EQMD's ability to properly use the legal process to recover the account receivables against the insurance companies as opposed to the insured/injured party." *Id*. at 25. According to EQMD, "insureds and/or claimants may face collections that adversely affect their credit ratings and/or litigation as EQMD has not waived any of its rights with respect to its account receivables." *Id*. at 26-27.

## ARGUMENT

## I.    LEGAL STANDARDS

FRCP 12(b)(6) requires that a complaint "contain something more . . . than . .
. a statement of facts that merely creates a suspicion [of] a legally cognizable right
of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation
omitted). A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to
relief' requires more than labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do." *Id.* Thus, "[t]hreadbare recitals of all the
elements of a cause of action, supported by mere conclusory statements do not
suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

FRCP 12(b)(1) allows for dismissal for "lack of jurisdiction over the subject
matter." Significantly, "the plaintiff has the burden of proving jurisdiction in order
to survive the motion." *King v. Corp. of U.S. of Am.*, No. 05 CV 72849 DT, 2005
WL 3320866, at *1 (E.D. Mich. Dec. 7, 2005) (citing *Michigan S RR Co. v. Branch
& St. Joseph Counties Rail Users Ass'n Inc.,* 287 F.3d 568, 573 (6th Cir.2002)). "The
party invoking federal jurisdiction bears the burden of establishing these elements."
*Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 710 (6th Cir. 2015).

## II.    *NOERR-PENNINGTON* IMMUNITY BARS EQMD'S CLAIMS.

EQMD's claims depend entirely on Defendants' arguments made in motions
and legal briefs filed in state court first-party insurance lawsuits. Such direct
communications with courts constitute core petitioning activity and are shielded

from liability by the *Noerr-Pennington* immunity doctrine. Because each of EQMD's claims rest upon this essential allegation, they should all be dismissed with prejudice.

The Supreme Court established the *Noerr-Pennington* immunity doctrine[2] to protect the right to petition, so that "parties who petition the government for governmental action favorable to them cannot be prosecuted under the antitrust laws even though their petitions are motivated by anticompetitive intent." *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 790 (6th Cir. 2007). While the *Noerr-Pennington* doctrine initially grew out of the antitrust field, the doctrine's applicability is not so limited. "The doctrine is, at bottom, founded upon a concern for the First Amendment right to petition and, therefore, has been applied to claims implicating that right." *Id*. Accordingly, federal courts apply the *Noerr-Pennington* doctrine to RICO claims,[3] claims alleging constitutional violations under 42 U.S.C. §1985,[4] and various common law tort theories under state law, such as civil

---

[2] The doctrine originates (and gets its name) from two Supreme Court cases, *E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) and *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965).

[3] *See, e.g.*, *Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*, 196 F.3d 818, 826 (7th Cir. 1999) ("Although the *Noerr-Pennington* doctrine originated in antitrust law, its rationale is equally applicable to RICO suits."); *Mir v. Greines, Martin, Stein & Richland*, 676 F. App'x 699, 701 (9th Cir. 2017) (same); *Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*, 229 F.3d 1135 (table) (2d Cir. 2000) (same).

[4] *See, e.g. Barnes Found. v. Twp. of Lower Merion*, 927 F. Supp. 874, 876 (E.D. Pa. 1996) (§1985(3) claims dismissed under *Noerr–Pennington*); *Reichenberger v.*

conspiracy and abuse of process.[5]

Each of EQMD's claims is premised on alleged misrepresentations in state court motions and briefs. *See* Compl., at 4, 7, 25. As the Sixth Circuit has observed, however, "*Noerr–Pennington* immunity protects private actors when they file court documents . . ." *VIBO Corp. v. Conway*, 669 F.3d 675, 684 (6th Cir. 2012).[6] Advocacy in the courts via motion practice is precisely the type of core petitioning activity protected by the First Amendment and shielded by *Noerr-Pennington*. *See Campbell*, 509 F.3d at 790. Accordingly, all of Plaintiff's claims should be dismissed with prejudice as barred by *Noerr-Pennington*.

---

*Pritchard*, 660 F.2d 280, 288–89 (7th Cir.1981) (citing *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1342-46 (7th Cir. 1977)).

[5] *See, e.g., New Day Farms, LLC v. Bd. of Trustees of York Twp., Ohio*, No. 2:08-CV-01107, 2009 WL 4016480, at *4 (S.D. Ohio Nov. 17, 2009) (civil conspiracy); *Pennwalt Corp. v. Zenith Labs., Inc.*, 472 F. Supp. 413, 424 (E.D. Mich. 1979) (abuse of process). *But see DirecTV, Inc. v. Zink*, 286 F. Supp. 2d 873, 874 (E.D. Mich. 2003).

[6] Federal courts outside the Sixth Circuit have similarly found court filings to be protected activity. *See, e.g., California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510–11 (1972) (private litigants may use the courts "to advocate their causes and points of view respecting resolution of their business and economic interests…"); *Mir v. Greines, Martin, Stein & Richland*, No. 2:14-4132-CAS(FFMX), 2015 WL 12746231, at *7 (C.D. Cal. Feb. 19, 2015), aff'd, 676 F. App'x 699 (9th Cir. 2017) (*Noerr-Pennington* applies because "plaintiff's predicate RICO acts consist almost entirely of the filing and service of various motions and writs."); *Williams v. Jones & Jones Mgmt. Grp., Inc.*, No. CV 14–2179–MMM (JEM), 2015 WL 349443, at *9 (C.D. Cal. Jan. 23 2015) (same).

## III.  EQMD HAS FAILED TO STATE ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED.

*Noerr-Pennington* aside, each of EQMD's claims has not been (and cannot be) adequately pleaded and should be dismissed under either FRCP 12(b)(6) or FRCP 12(b)(1).

### A.  The RICO Claim Does Not Allege the Essential Elements.

To prevail on its RICO cause of action, EQMD must establish "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Moon v. Harrison Piping Supply,* 465 F.3d 719, 723 (6th Cir.2006). EQMD's allegations do not sufficiently plead these elements, as set forth below.

#### i.  *Insufficient allegations of an enterprise.*

EQMD alleges an association-in-fact enterprise, which is a "union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise must be "an entity *separate and apart* from the pattern of [racketeering] activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 577 (1981) (emphasis added). The participants must "function as a continuing unit" with a "common purpose." *Boyle v. United States*, 556 U.S. 938, 944-45 (2009). Consequently, predicate acts committed "independently and without coordination" do not give rise to an association-in-fact enterprise. *Id.* at 947 n.4. In other words, "RICO does not penalize parallel, uncoordinated fraud." *United Food & Commercial Workers Unions & Empl'rs Midwest Health Benefits Fund v.*

8

*Walgreen Co.*, 719 F.3d 849, 855 (7th Cir. 2013); *see also VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 700 (6th Cir. 2000), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

All of EQMD's claims, including its RICO claim, "arise[] from the fraud perpetrated upon various courts throughout the State of Michigan by Defendants through a conspiracy between and among Defendants." Compl. at 4. EQMD alleges no facts to support the inference of an actual agreement or common purpose, however, and such claims based only on allegations of conscious parallelism fail to plead the existence of an enterprise and are properly dismissed on a FRCP 12(b)(6) motion. *See, e.g.*, *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1068 (11th Cir. 2017); *see also RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1051-52 (D.C. Cir. 2012).

EQMD alleges only that "[e]ach defendant has violated RICO by filing litigation documents containing material representations known by Defendants to be false," which ultimately caused EQMD to "suffer[] injury in fact as a result." Compl. at 28. These facts are insufficient as a matter of law to demonstrate an association-in-fact; at most, these allegations show similarly situated insurance companies "engaged in the same business in the same area, dealing with the same providers, acting, at most, interdependently in their pursuit of litigation by monitoring the activities of the other." *State Farm Mut. Auto. Ins. Co. v. Universal Health Grp.*,

*Inc.*, No. 14-CV-10266, 2015 WL 13620467, at *3 (E.D. Mich. May 1, 2015) ("Court filings are public records . . . companies such as [State Farm] are constantly scouring their providers for indicia of potential fraud. That search certainly includes looking at public court dockets."). Indeed, to suggest a conspiracy by the mere fact that litigants have used similar winning arguments against EQMD – all of which were contained within publicly filed documents – is far-fetched.

The Complaint also fails to allege facts regarding any ongoing, coordinated behavior. No facts discuss the structure of the alleged enterprise, the roles of the supposed members of the enterprise, how they acted, how they conducted the enterprise, the duration of the enterprise, the purpose of the enterprise, any communications among supposed co-conspirators, or how the enterprise – as opposed to its individual members – was involved in the challenged acts. Instead, EQMD's Complaint "essentially lists a string of entities allegedly comprising the enterprise, and then lists a string of supposed racketeering activities in which the enterprise purportedly engages." *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 781–82 (6th Cir. 2000) (affirming FRCP 12(b)(6) dismissal of "defective" RICO complaint). This Complaint is not sufficient under Sixth Circuit law, which requires a "properly pled RICO claim" to "cogently allege activity 'that would show ongoing, coordinated behavior among the defendants that would constitute an association-in-fact.'" *Id*. (citing *Frank v. D'Ambrosi,* 4 F.3d 1378, 1386 (6th

Cir.1993)).[7]  EQMD has not done so, and its RICO claim fails as a result.

    ii.      *Insufficient allegations of a predicate act.*

EQMD alleges that "filing litigation documents containing material representations known by Defendants to be false" are the predicate acts which constitute both mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343). Compl. at 28. These allegations fail to constitute a predicate act as a matter of law.

The Second Circuit Court of Appeals recently examined whether similar allegations of "fraudulent" and "baseless litigation activities" could constitute RICO predicate acts and concluded they could not. *Kim v. Kimm*, 884 F.3d 98, 101 (2d Cir. 2018). The plaintiff in *Kim* alleged defendants filed "false legal documents [which] were intended to mislead the district court and therefore were predicate acts of obstruction of justice, mail fraud, and wire fraud." *Id*. The Second Circuit rejected that argument, holding that "[i]n the absence of corruption, such litigation activity cannot act as a predicate offense for a civil-RICO claim." *Id*. at 104 (internal quotations omitted). *See also Melton v. Blankenship*, No. 08-5346, 2009 WL 87472, at *1 (6th Cir. 2009) (allegations that defendants "conspired against [plaintiffs] in a

---

[7] *See also Ball Fed. Nat'l Mortg. Ass'n*, No. 16-11475, 2016 WL 4702585, at *4 (E.D. Mich. Sept. 8, 2016) ("[T]here is no allegation of an ongoing organization or pattern of activity."); *Bocanegra v. Stacey*, No. 10-CV-13749, 2011 WL 4448979, at *4 (E.D. Mich. Sept. 26, 2011) ("Plaintiff does not allege how [defendant] has a relationship among the other members of the enterprise, and that longevity exists sufficient to permit [defendants] to pursue [the enterprise's] purpose.")

previous suit by maliciously filing a counterclaim that lacked a factual basis" is not a "RICO predicate[]").[8]

As the Second Circuit recognized, "there are compelling policy arguments supporting this rule." *Id*. at 104. "First, '[i]f litigation activity were adequate to state a claim under RICO, every unsuccessful lawsuit could spawn a retaliatory action.'" *Id*. (internal citations omitted). Permitting such RICO claims based on supposed fraudulent litigation activities would also "'chill litigants and lawyers and frustrate the well-established public policy goal of maintaining open access to the courts' because 'any litigant's or attorney's pleading and correspondence in an unsuccessful lawsuit could lead to drastic RICO liability.'" *Id*. (internal citations omitted).

Such is the case here. EQMD attempts to convert its losing efforts in Michigan

---

[8] Federal courts across the country routinely hold that supposedly fraudulent or sham "litigation activities" such as filing false affidavits cannot, without more, constitute predicate acts. *See, e.g., Feld Entm't Inc. v. Am. Soc. for the Prevention of Cruelty to Animals*, 873 F.Supp.2d 288, 318 (D.D.C. 2012) ("filing fraudulent documents or engaging in baseless litigation" cannot be predicate acts for RICO "where such acts constitute 'the only allegedly fraudulent conduct.'") (internal citation omitted); *Gabovitch v. Shear*, 70 F.3d 1252 (table) (1st Cir. 1995) (holding that "proffering false affidavits and testimony to the state court" was not a predicate act); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 (11th Cir. 2004); *Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003); *von Bulow v. von Bulow*, 657 F. Supp. 1134, 1145 (S.D.N.Y.1987); *Auburn Medical Center, Inc. v. Andrus,* 9 F. Supp. 2d 1291, 1299 (M.D.Ala.1998); *Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F.Supp.2d 153, 171–72 (E.D.N.Y. 2010); *Luther v. Am. Nat'l Bank of Minn.*, 2012 WL 5471123, at *6 (D. Minn. Oct. 11, 2012); *Daddona v. Gaudio*, 156 F. Supp. 2d 153, 162 (D. Conn. 2000); *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th Cir. 2016).

state courts into a retaliatory RICO suit in this Court. But EQMD's alleged predicate acts of "filing litigation documents containing material representations known by Defendants to be false" do not amount to RICO predicate acts.   Compl. at 28. Accordingly, its RICO claim should be dismissed.

### B.    EQMD Has Failed to Plead the Elements of its § 1985(3) Claim.

To state a viable claim under § 1985(3), EQMD must plead (1) a conspiracy between two or more persons, (2) conceived for the purpose of depriving a person or class of people of the equal protection of the laws, (3) an act committed in furtherance of the conspiracy, and (4) that a person was either injured in his or her person or property, or deprived of a right guaranteed by the Constitution. *Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir. 2005). "A plaintiff also must show that the conspiracy was motivated by racial or other class-based invidiously discriminatory animus." *Id*. "In the context of § 1985(3), plaintiffs shoulder a heavy pleading burden," and "[c]onspiracy claims must be pled with some degree of specificity." *In re Flint Water Cases*, 384 F. Supp. 3d 802, 851 (E.D. Mich. 2019). The Complaint makes no attempt to plead the majority of these required elements.

### i.    *EQMD did not plead membership in a protected class.*

First, the Complaint does not allege EQMD is a member of any sort of protected class. This alone is fatal to EQMD's § 1985(3) claim because "[i]n order to be protected by § 1985(3), a class must possess the characteristics of a discrete

and insular minority, such as race, national origin, or gender." *Warner v. Greenebaum, Doll & McDonald*, 104 F. App'x 493, 498 (6th Cir. 2004) (internal quotations omitted); *see also Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000) ("§ 1985(3) only covers conspiracies against: 1) classes who receive heightened protection under the Equal Protection Clause; and 2) those individuals who join together as a class for the purpose of asserting certain fundamental rights."). The Sixth Circuit views this membership requirement strictly, only applying § 1985(3) protection to race, national origin, gender, and certain "clearly defined" political interest groups, and refusing to recognize plaintiffs alleging similar economic and commercial interests, mental disabilities, and employment statuses. *See Warner*, 104 F. App'x at 498. EQMD has not alleged a membership in any protected class that could invoke the protections of this civil rights statutory provision.

> ii.     *EQMD did not allege a discriminatory animus.*

Second, EQMD failed to allege that Defendants' completed their purportedly conspiratorial actions with a discriminatory motive. "Pleading invidious class-based animus is important," *In re Flint Water Cases*, 384 F. Supp. 3d at 852, and "[a]n essential prerequisite for an action under § 1985(3)." *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999).  "In other words, there must be proof of some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 765 (6th Cir. 2010) (internal

quotations omitted). EQMD has not made any such allegations in its Complaint. Instead, the only motivation that could be derived from the Complaint is related to Defendants' economic activities, which is not actionable under § 1985(3).[9]

### iii. The Absence of Government Actors also Defeats EQMD's Section 1985 Claim.

Third, the Sixth Circuit has long held that "Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates….[s]o if there is no underlying constitutional violation, there can be no claim for conspiracy either." *Bartlett v. Washington*, No. 19-1285, 2019 WL 6522168, at *4 (6th Cir. Dec. 4, 2019). The only constitutional violation alleged by EQMD is a claimed Fourth Amendment violation. Compl. at 29-30. But EQMD has not pleaded a valid Fourth Amendment violation here given the absence of government actors and, therefore, the § 1985(3) claim must be dismissed. *See id.*

EQMD alleges that "[e]ach Defendant conspired to cause a deprivation of the equal privileges and immunities afforded to EQMD…ultimately violating Plaintiff's

---

[9] The only mention of Defendants' alleged motivations appear in three paragraphs of EQMD's abuse of process and conspiracy claims. *See* Compl. at 35-37. Critically, these allegations are limited to economic and monetary motivations. *See id.* Therefore, even if the Court were to apply these allegations to the conspiracy to violate civil rights claim, the discriminatory animus element would still not be sufficiently pleaded because the Supreme Court has "made it clear that conspiracies motivated by economic or commercial animus are not actionable under § 1985(3)." *Warner*, 104 F. App'x at 498 (citing *United Bhd. of Carpenters and Joiners of America, Local 610 v. Scott*, 463 U.S. 825, 838 (1983)).

Fourth Amendment rights." Compl. at p. 29. That proposition is unsupported because each Defendant is a private corporation and "Due Process rights and Fourth Amendment rights are not protected against private conspiracies under § 1985(3)." *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1024 (7th Cir. 2000); *see also Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 278 (1993) (citing the Fourth Amendment as one "of those more general rights [that] are obviously *not* protected against private infringement" and holding that "[r]espondents' § 1985(3) 'deprivation' claim must fail, then, because they have identified no right protected against private action that has been the object of the alleged conspiracy") (emphasis in original). As Defendants are private actors, EQMD cannot maintain a valid Fourth Amendment claim and, as a result, its conspiracy claim based on Fourth Amendment grounds must be dismissed.

> iv.      *EQMD did not allege a valid conspiracy.*

Finally, to allege a conspiracy to interfere with civil rights claim under § 1985(3), EQMD must plead a valid conspiracy. *See Peters*, 427 F.3d at 1038. For all of the reasons set forth below in Section III.F, incorporated herein by reference, EQMD has not alleged a valid conspiracy claim.

In addition, a plaintiff alleging a conspiracy under § 1985(3) "must establish not only that the defendants share a common plan but that they share a common discriminatory objective." *Arsan v. Keller*, 784 F. App'x 900, 913 (6th Cir. 2019)

16

(internal quotations omitted). The so-called "common plan" described by EQMD is limited to "coordination and/or sharing of information (briefs, templates for court filing)," "strikingly similar argumentation, language, typography, and/or appearance of legal briefs and of denial language," and "coordinat[ion] verbally and through written correspondence." Compl. at 36-37. These general allegations do not allege a common plan to accomplish a discriminatory objective. *See Arsan*, 784 F. App'x at 914 (affirming dismissal of § 1985(3) claim and holding that "the existence of communication between [persons]—who were all involved with the custody case— does not plausibly allege a common scheme to deprive [plaintiff] of constitutional rights, let alone one that is race-based.").

### C. The Court Lacks Jurisdiction Over EQMD's Federal Declaratory Judgment Act Claim.

The FDJA count should be dismissed for two reasons. First, "[t]he Declaratory Judgment Act is procedural in nature and does not create an independent cause of action that can be invoked absent some showing of an articulated legal wrong," *Doe v. Univ. of Dayton*, 766 F. App'x 275, 291 (6th Cir. 2019) (internal quotations omitted), and it does not provide an independent basis for subject matter jurisdiction. As explained above, Plaintiff has failed to state a claim under either RICO or 42 U.S.C. § 1985(3). No federal question jurisdiction exists without those two claims.[10]

---

[10] In addition, there is no diversity jurisdiction: EQMD and State Farm are both Illinois-based companies. *See* Compl. at 9-10.

If EQMD's "other claims have been dismissed, [its] declaratory judgment claim likewise fails." *Doe v. Univ. of Dayton*, 766 F. App'x at 291.

Second, EQMD lacks standing to bring a claim for declaratory relief under the FDJA. The FDJA provides that, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party[11] seeking such declaration, whether or not further relief is or could be sought." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007), citing 22 U.S.C. § 2201. "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *Id*. at 127 (internal citation omitted). "The requirement of an actual controversy encompasses concepts such as ripeness, standing, and the prohibition against advisory rulings." *Petter Investments, Inc. v. Hydro Eng'g, Inc.*, 828 F. Supp. 2d 924, 932 (W.D. Mich. 2011) (internal citation omitted). To establish standing to bring an action for declaratory or injunctive relief, "a plaintiff must show actual present harm or a significant possibility of future harm in order to demonstrate the need for pre-enforcement review." *Goleta Nat'l Bank v. O'Donnell*, 239 F. Supp. 2d 745, 751 (S.D. Ohio 2002) (internal citation omitted). "Basically, the question in each case is

---

[11] "The remedies of the Declaratory Judgment Act are not available unless the party invoking it has an enforceable interest in the proceeding." *Local 180 of Intern. Union, United Auto., Aircraft and Agr. Implement Workers of America, AFL-CIO v. J. I. Case Co.*, 185 F. Supp. 130, 133 (E.D. Wis. 1960).

whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (internal quotation omitted).

EQMD fails to meet these basic threshold requirements. By EQMD's own account, it did not provide any services, products, or accommodations for any insured's care, recovery, or rehabilitation; rather, it provided services to the insureds' treating physicians.[12] If EQMD did not provide any services to patients, but only to their medical providers, then those services are not compensable under the No-Fault Act because they were not reasonably necessary for anyone's care, recovery, or rehabilitation. *See Griffith ex rel Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 532-536; 697 NW2d 895 (2005).  On the other hand, if EQMD did indeed provide patients in Michigan with medications, then EQMD was supplying, distributing, selling, or otherwise disposing of prescription drugs without the requisite license, which it concedes it does not possess, and its bills are not reimbursable under the No-Fault Act. *See, e.g.,* MCL 333.17748; MCL 500.3157(a).

---

[12] EQMD pleads it does not "dispense, prepare, carry, store, handle, possess, sell, purchase, repackage, or manufacturer drugs," Compl. at 6, and further that its business relationships are with the providers, not the insureds. *Id*. (EQMD "works with dispensing practitioners" and "merely provides the software, technical support and training for the software, and billing/collection services related to those medications.").

In either scenario, EQMD is not entitled to No-Fault benefits, because its services were either (a) not allowable expenses or (b) not lawfully rendered and therefore not reimbursable. The conduct EQMD complains of, therefore, simply does not present an actual case or controversy; such conduct has no legal effect on EQMD's rights to conduct its business in the State of Michigan, nor does it affect its rights to enter into business relationships with medical providers. *See Goleta*, 239 F. Supp. 2d at 753. EQMD is not an "interested party" because it has no enforceable interest in No-Fault benefits, and because EQMD has alleged its business relationships are with the providers, not with the insureds or the insurance companies, it has not identified any "adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127. For these reasons, the FDJA claim fails.

### D. Injunction and Fraud on the Court Claims Are Not Independent Causes of Action.

EQMD's injunction and fraud upon the court claims both suffer from the same fatal flaw: neither are valid, independent causes of action.

"Injunctive relief is a remedy…, not an independent cause of action." *Skidmore v. Access Grp., Inc.*, 149 F. Supp. 3d 807, 809 n.1 (E.D. Mich. 2015); *see also Goryoka v. Quicken Loan, Inc.*, 519 Fed. . App'x 926, 929 (6th Cir. 2013) ("The district court correctly found that [claims for quiet title and for injunctive relief] are remedies and not separate causes of action" and "were properly dismissed"). Count

IV therefore is improper and should be dismissed.

Fraud upon the court is also not an independent cause of action that can be brought in a different case than the one in which the fraud was supposedly committed. Indeed, "[t]his has been the rule in the Sixth Circuit for over 100 years." *LaMie v. Wright*, No. 1:12-CV-1299, 2014 WL 1686145, at *14 (W.D. Mich. Apr. 29, 2014).[13]   EQMD's fraud upon the court claim is based on Defendants' alleged conduct "to the Michigan judiciary by way of dispositive motion practice" in certain state court actions. Compl. at 33. As EQMD's claim is based on fraud in state court proceedings, FRCP 60 "does not apply in this case" because it "provides a means by which the court may relieve a party from a final judgment or order of the court," but does not "give this court the authority or the jurisdiction to override a state court's judgment in a separate action." *Riegler v. Ford Motor Co.,* No. 1:04 CV 1052, 2005 WL 8166991, at *4 (N.D. Ohio Nov. 23, 2005); *see also Lewis v. Walker*, No. 17-6041, 2018 WL 4348063, at *4 (6th Cir. Mar. 15, 2018) ("[Plaintiff] cites no authority to support his proposition that a claim of fraud upon the court can be used

---

[13] Fraud upon the court stems from FRCP 60, which provides that a court may "relieve a party or its legal representative from a final judgment, order, or proceeding for…fraud" (FRCP 60(b)(3)) or "set aside a judgment for fraud on the court" (FRCP 60(d)(3)). Under both provisions, an aggrieved party "would be expected to seek this fraud-on-the-court relief first in the…court, where the alleged fraud first took place." *Followell v. Mills*, 317 F. App'x 501, 505 n.1 (6th Cir. 2009); *see also Weisman v. Charles E. Smith Mgmt., Inc.*, 829 F.2d 511, 513 (4th Cir. 1987)("[T]he proper forum in which to assert that a party has perpetrated a 'fraud on the court' is the court which allegedly was a victim of that fraud.").

to recover damages in a § 1983 action for fraud alleged to have occurred in a prior [state] proceeding."); *LaMie*, 2014 WL 1686145, at *14 ("The federal courts will not entertain a collateral attack on a state judgment on the basis of 'fraud on the court' in an action for damages.").  Count V should also be dismissed.

### E.    The Abuse of Process Claim Fails as a Matter of Michigan Law.

Abuse of process has two elements: "(1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Phillips v. Ingham Cty.*, 371 F. Supp. 2d 918, 932 (W.D. Mich. 2005); *see also Three Lakes Ass'n v. Whiting*, 75 Mich. App. 564, 573 (1977) ("[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.") (internal citations omitted).

EQMD fails to make out either element. EQMD claims State Farm "used the process of litigation for an ulterior purpose," including to "reduce the claims payouts" and to "save money." Compl. at 35. But legitimately scrutinizing and challenging the validity of improper bills is neither improper nor an ulterior purpose. Indeed, insurers *have duty to do so* under the No-Fault Act. *See LaMothe v. Auto Club Ins. Ass'n*, 214 Mich. App. 577, 582 n.3 (1995), *overruled on other grounds by Covenant Med. Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 500 Mich. 191 (2017) ("[N]ot only should an insurer audit and challenge the reasonableness of bills

submitted by health care providers, but the providers should expect no less.").

Even if the alleged ulterior purposes were factually supported or improper (they are neither), EQMD does not allege the second required element: an act in the use of process which is improper in the regular prosecution of the proceeding. *See Partrich v. Farber*, 448 F. App'x 526, 529 (6th Cir. 2011). EQMD's Complaint alleges nothing more than State Farm protecting its legal rights through the normal course of litigation, and therefore not collateral to the purposes of those litigations, which is not abuse of process as a matter of Michigan law.

### F.   EQMD Has Not Alleged a Conspiracy Under Michigan Law.

EQMD's civil conspiracy claim should be dismissed on two independent bases: (1) EQMD has not plead a cognizable underlying tort; and (2) EQMD has failed to allege that Defendants were acting with an illegal purpose.

First, under Michigan law, "[a] conspiracy claim is not cognizable absent a cognizable underlying tort." *Nehls v. Hillsdale Coll.,* 65 F. App'x 984, 992 (6th Cir. 2003); *see also Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 384 (2003), aff'd, 472 Mich. 91 (2005) ("[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort."). Here, EQMD advances its fraud on the court claim as the predicate for its conspiracy claim: "Defendants are working together…to commit a legal act (adjudication of EQMD claims) in an illegal manner (fraud upon the court)." Compl.

at 36.  But, as set forth in Section III.D, EQMD has not alleged a valid fraud upon the court claim. As there is no valid tort underlying EQMD's conspiracy claim, Count VII must be dismissed. *See Nehls,* 65 F. App'x at 992 ("[P]laintiff has failed to establish a cognizable defamation claim; therefore, the conspiracy claims must also fail.").[14]

Second, EQMD is alleging a conspiracy to defraud. *See* Compl. at 36. Plaintiffs who plead a conspiracy to defraud "must show both an illegal purpose and damages." *Xerox Corp. v. N.W. Coughlin & Co.,* No. 06-CV-14358, 2009 WL 261530, at *10 (E.D. Mich. Feb. 4, 2009) (quoting *Goldsmith v. Moskowitz*, 74 Mich. App. 506, 521 (1977)). Here, however, the conspiracy allegations in the Complaint are limited to coordinating and sharing court filings, communicating with the other defendants, and taking certain legal positions in state court actions—none of which is illegal. Compl. at 36-37. EQMD then concludes, without explanation, that these actions were accomplished with the "inten[tion] to wrongfully use the state civil litigation process in an effort to economically and reputationally harm EQMD." *Id.* at 36. As there is no other detail in the Complaint regarding Defendants' alleged illegal purpose, the conspiracy claim should be dismissed.

---

[14] Although not identified as an underlying tort in EQMD's conspiracy count, the abuse of process claim is also not a valid underlying tort for the reasons set forth in Section III.E.

## **CONCLUSION**

For the foregoing reasons, State Farm respectfully requests that this Court grant its motion, dismiss EQMD's complaint in its entirety with prejudice, and grant any other further relief the Court deems proper.

Dated: February 25, 2020                    Respectfully submitted,


                                            */s/ Gregory L. Curtner*
                                            Gregory L. Curtner (P12414)
                                            Matthew P. Kennison (P79653)
                                            RILEY SAFER HOLMES & CANCILA LLP
                                            121 W. Washington St., Suite 402
                                            Ann Arbor, MI 48104
                                            Phone: 734.773-4911
                                            Fax: 734.773-4901
                                            gcurtner@rshc-law.com
                                            mkennison@rshc-law.com
                                            *Attorneys for State Farm Mutual Automobile*
                                            *Insurance Company*

25

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on February 25, 2020, he caused a true and correct copy of the foregoing document to be served using the Court's electronic filing system, which will send electronic notification of such filing to all parties that have appeared in this action.

*/s/ Gregory L. Curtner*
Gregory L. Curtner (P12414)