UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQMD, INC.,                                    Case No. 19-13698

        Plaintiff,                             Stephanie Dawkins Davis
v.                                             United States District Judge

FARM BUREAU GENERAL                            R. Steven Whalen
INSURANCE COMPANY OF                           United States Magistrate Judge
MICHIGAN, FARM BUREAU
MUTUAL INSURANCE COMPANY
OF MICHIGAN, LIBERTY
MUTUAL FIRE INSURANCE
COMPANY, LIBERTY MUTUAL
INSURANCE CORPORATION,
SAFECO INSURANCE COMPANY
OF ILLINOIS, STATE FARM
MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS
TO DISMISS (ECF NOS. 22, 25, 26), DENYING PLAINTIFF'S
MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT
(ECF No. 57), AND GRANTING STATE FARM'S MOTION FOR
LEAVE TO FILE SUPPLEMENTAL AUTHORITY (ECF NO. 66)**

## I.    INTRODUCTION

This is a civil dispute brought under the federal Racketeer Influenced and

Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO") and 42 U.S.C. § 1985(3),

and others, with additional state law claims for abuse of process and civil

conspiracy.  (ECF No. 1).  Plaintiff EQMD, Inc. ("EQMD"), a pharmacy

1

management/software company, contends that its services entitle it to personal

protection insurance benefits under Michigan's No-Fault Act, Mich. Comp. Laws

§ 500.3157, and that Defendants, several insurance companies, have conspired to

rob EQMD of these benefits by falsely claiming in filings in Michigan state courts

that EQMD has been operating as an unlicensed pharmacy, thereby rendering it

ineligible to recover benefits under the Act.  (ECF No. 1, PageID.5–7).

Before the court are three motions to dismiss filed respectively by State

Farm Mutual Automobile Insurance Company ("State Farm") (ECF No. 22); Farm

Bureau General Insurance Company of Michigan and Farm Bureau Mutual

Insurance Company of Michigan ("Farm Bureau") (ECF No. 25); and Liberty

Mutual Fire Insurance Company, Liberty Mutual General Insurance Company,

Liberty Mutual Insurance Corporation, and Safeco Insurance Company of Illinois

("Liberty Mutual") (ECF No. 26); and EQMD's motion to supplement the

complaint (ECF No. 57).  EQMD filed responses to Defendants' motions to

dismiss (ECF Nos. 35, 36, 42).  State Farm (ECF No. 52), Farm Bureau (ECF No.

51), and Liberty Mutual (ECF No. 53) filed their respective replies.  And State

Farm (ECF No. 64) and Farm Bureau (ECF No. 65) filed responses to EQMD's

motion to supplement.  EQMD declined to file a reply.  The court held a hearing

on the motions on August 26, 2020 and took them under advisement.  On

December 15, 2020, State Farm also filed Motion for Leave to Submit

2

Supplemental Authority, attaching the case *Harbi v. State Farm Mutual Auto. Ins. Co.*, No. 352139, 2020 WL 7302375 (Mich. Ct. App. Dec. 10, 2020).  Liberty Mutual (ECF No. 67) and Farm Bureau (ECF No. 68) joined in support of the motion.  EQMD responded (ECF No. 69), and State Farm replied (ECF No. 70).

For the reasons set forth below, the court **GRANTS** Defendants' motions to dismiss (ECF Nos. 22, 25, 26), **DENIES** EQMD's motion to supplement the complaint (ECF No. 57), and **GRANTS** State Farm's motion for leave to file supplemental authority (ECF No. 68).

## II.   FACTUAL BACKGROUND

EQMD is a pharmacy management/software company.  (ECF No. 1, PageID.5).  The company "works with dispensing practitioners in multiple states (including Michigan) to enable them to more easily manage their orders of medications from properly licensed pharmacies/manufacturers and/or wholesale distributors through the use of EQMD's proprietary software program."  (*Id.*)  Once these physician groups "lawfully prescribe, order, receive and dispense medications," EQMD handles the billing and collection for those drugs.  (*Id.* at PageID.6).  EQMD underscores that it does not provide medications.  (*Id.*)

According to EQMD, in various No-Fault cases in which claimants submitted bills to Defendant insurers, Defendants filed motions for summary disposition, and in one case a motion *in limine*, to dismiss EQMD's bills, without

notice to EQMD.  (*Id.* at PageID.25–26).  As a result, EQMD alleges that its

claims have been extinguished without its knowledge, and, even when it has

realized that Defendants have filed motions, it has been prohibited from defending

itself at oral argument because the claims have already been dismissed.  (*Id.*)

Furthermore, EQMD argues that Defendants have falsely claimed in their

motions that EQMD has been operating as an unlicensed pharmacy, thereby

rendering it ineligible to recover benefits under the Act.  (ECF No. 1, PageID.5–7).

In particular, EQMD asserts that Defendants made these false claims after an

investigation by the Michigan Department of Licensing and Regulatory Affairs

("LARA").  On April 24, 2018, Farm Bureau filed a complaint with LARA

alleging that EQMD was acting as an "unlawful pharmacy service" from 2015 to

2018.  (ECF No. 1-1, PageID.42).  After an investigation, LARA found on

February 21, 2019 that "a violation of the Public Health Code could not be

established."  (ECF No. 1-3, PageID.158).  EQMD argues that Defendants

continued to represent in state court that EQMD was unlawfully rendering

pharmacy services under Michigan's Public Health Code—even after LARA

issued its determination declaring otherwise.  (ECF No. 1, PageID.8).

It is because of these alleged misrepresentations that EQMD brings the

instant federal lawsuit.  (*Id.* at PageID.4).  It filed its complaint on December 16,

2019.  The complaint alleges seven Counts:  RICO Violation, 18 U.S.C. § 1961, *et*

4

*seq.* (Count I); Conspiracy to Interfere with Civil Rights, 42 U.S.C. § 1985(3)

(Count II); Declaratory Judgment, 28 U.S.C. § 2201 (Count III); Injunction, Fed.

R. Civ. P. 65 (Count IV); Fraud Upon the Court (Count V); Abuse of Process

(Count VI); and Civil Conspiracy, Mich. Comp. Laws § 750.157a (Count VII).

Defendants seek dismissal of all these claims.

## III.   MOTION TO FILE SUPPLEMENTAL AUTHORITY

As a preliminary matter, the court will address State Farm's Motion for

Leave to Submit Supplemental Authority (ECF No. 66) because it has some effect

on the analysis of this case.  It provides a recent Michigan Court of Appeals case

involving EQMD and itself: *Harbi v. State Farm Mutual Auto. Ins. Co.*, No.

352139, 2020 WL 7302375 (Mich. Ct. App. Dec. 10, 2020).  In response, EQMD

opposes the motion because (1) the opinion is unpublished and, therefore, not

binding; (2) if the court considers outside matters, a motion to dismiss must be

construed as a motion for summary judgment; and (3) the court of appeals and the

trial court erred by not completely considering relevant testimony in violation of

Michigan Rule of Evidence 106.  (ECF No. 69).  EQMD also notes that the

opinion's persuasive authority is further diminished because it intends to appeal

that decision, claiming that it "has a fair chance of overturning the Court of

Appeals in the Michigan Supreme Court."  (*Id.* at PageID.4158, 4169).

Nevertheless, the court finds consideration of the opinion appropriate.

First, while the court agrees with EQMD that *Harbi* is not binding, this court may still consider the opinion because it may offer persuasive value.  *See Marku v. Ashcroft*, 380 F.3d 982, 988 (6th Cir. 2004) ("[C]ases from outside the circuit are not binding on us, but they do have some persuasive value.").  Second, while a court cannot, as a general rule, consider matters outside the four corners of the complaint when ruling on a motion to dismiss under Rule 12(b)(6),  *Clark v. Walt Disney Co.*, 642 F. Supp. 2d 775, 781 (S.D. Ohio 2009), exceptions to this rule exist.  For example, under Rule 10(c), copies of written instruments attached as exhibits to a pleading are a part of that pleading for all purposes; therefore, the court may consider any documents that the plaintiff has attached to the complaint. The court may also consider documents that a defendant attaches to a motion to dismiss if the documents are referred to in the complaint and are central to the plaintiff's claims.  *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). And, of particular relevance here, the court may consider public records and matters of which a court may take judicial notice.  *See Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir.1999), *abrogated on other grounds*, *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002).  Thus, the court may take judicial notice of *Harbi*, a public record, without transforming Defendants' motions to dismiss into ones for summary judgment.

Third, the court fails to see how a possible violation of MRE 106 precludes it from considering *Harbi*; at best, any such faults may affect the opinion's persuasive value. And finally, while EQMD suggested it was going to appeal *Harbi*, the court has found no indication of any successful appeal to the Michigan Supreme Court. *See* Appellate Docket Sheet, *Harbi v. State Farm Mutual Auto. Ins. Co.*, No. 352139, 2020 WL 7302375 (Mich. Ct. App. Dec. 10, 2020), https://courts.michigan.gov/opinions_orders/case_search/Pages/default.aspx?SearchType=1&CaseNumber=352139&CourtType_CaseNumber=2. Rather, EQMD has only filed a motion for reconsideration, which was denied. (*Id.*) And, according to its response, EQMD had until December 31, 2020 to appeal (ECF No. 69, PageID.4158); since that time has passed, it appears no appeal will be forthcoming. As a result, the motion is **GRANTED**.

## IV. MOTIONS TO DISMISS (ECF NOS. 22, 25, 26)

### A. Legal Standard

Defendants bring their motions to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted.

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*,

751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598

(6th Cir. 1994)).  "A facial attack is a challenge to the sufficiency of the pleading

itself.  On such a motion, the court must take the material allegations of the petition

as true and construed in the light most favorable to the nonmoving party."

*McQueary v. Colvin*, No. 3:15-CV-00068-CHL, 2017 WL 63034, at *3 (W.D. Ky.

Jan. 5, 2017) (quoting *Ritchie*, 15 F.3d at 598); *see also Cartwright*, 751 F.3d at

759 ("A facial attack goes to the question of whether the plaintiff has alleged a

basis for subject matter jurisdiction, and the Court takes the allegations of the

complaint as true for purposes of the Rule 12(b)(1) analysis").  "A factual attack,

on the other hand, is not a challenge to the sufficiency of the pleading's

allegations, but a challenge to the factual existence of subject matter jurisdiction."

*McQueary*, 2017 WL 63034, at *3 (quoting *Ritchie*, 15 F.3d at 598).  Here,

Defendants make a facial attack.  Thus, the court takes all well-pleaded facts in

plaintiff's complaint as true.

> To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first

comply with Rule 8(a)(2), which requires " 'a short and plain statement of the

claim showing that the pleader is entitled to relief,' in order to 'give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests.' "  *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*,

355 U.S. 41, 47 (1957)).  A plaintiff is also obliged "to provide the grounds of his

entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted)).

In *Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted)); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (noting that the factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief").

B.    *Noerr-Pennington* Immunity – Counts I and II

Defendants argue that all of EQMD's claims should be dismissed because they are barred by *Noerr-Pennington* immunity.  (*See* ECF No. 22, PageID.788–90; ECF No. 25, PageID.837–38; ECF No. 26, PageID.862).  For the reasons provided below, the court concludes that the *Noerr-Pennington* doctrine bars EQMD's RICO (Count I) and Section 1985(3) (Count II) claims.

The Petition Clause of the First Amendment to the U.S. Constitution provides that private actors have the right to petition the government for action. U.S. Const. amend. I ("Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances.").  The *Noerr-Pennington* doctrine protects individuals from liability in their efforts to pursue their First Amendment free petition rights.  *Opdyke Inv. Co. v. City of Detroit*, 883 F.2d 1265, 1273 (6th Cir. 1989).  The Supreme Court first recognized this principal in the antitrust context in *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) ("*Noerr* "), and *United Mine Workers v. Pennington,* 381 U.S. 657 (1965) ("*Pennington* "), and further developed it in *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365 (1991).  "The essence of the doctrine . . . is that 'parties who petition the government for governmental action favorable to them cannot be prosecuted under the antitrust laws even though their petitions are motivated by anticompetitive intent.' "  *Campbell v. PMI Food*

10

*Equipment Grp., Inc.*, 509 F.3d 776, 790 (6th Cir. 2007) (internal citations omitted) (quoting *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'n, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988)).  For example, the *Noerr-Pennington* doctrine has been extended to protect citizens who file a lawsuit.  *Eaton v. Newport Bd. of Educ.*, 975 F.2d 292, 299 (6th Cir. 1992) ("The *Noerr-Pennington* doctrine applies to judicial proceedings."); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510–11 (1972) (extending *Noerr-Pennington* to the use of "the channels and procedures of state and federal agencies and courts" because "[t]he right of access to the courts is . . . but one aspect of the right of petition").

Noerr-Pennington immunity has also been extended by the courts to areas of law outside of antitrust.  EQMD seems to acknowledge that *Noerr-Pennington* immunity may apply, but argues that it has satisfied two exceptions to such immunity.[1]  Regardless of whether EQMD has conceded the point, application of

---

[1] The court acknowledges that EQMD at least alludes to the argument that *Noerr-Pennington* does not apply.  But its articulation of its position is somewhat muddled in that it appears to be arguing for a fraud exception instead.  (ECF No. 42, PageID.1375–79).  Regardless, to the extent EQMD argues that *Noerr-Pennington* immunity should not be applied outside of the antitrust context, (ECF No. 42, PageID.1377–78), this argument fails.  First, undeveloped arguments are deemed forfeited.  *See United States v. Fowler*, 819 F.3d 298, 309 (6th Cir. 2016) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").  Second, as to the merits, the Supreme Court itself has invoked *Noerr-Pennington* principles outside of antitrust.  *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 912–14 (1982) (noting the right to petition recognized in *Noerr* in holding that the plaintiff's boycott of white merchants was protected by the First Amendment); *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741-44 (1983) (noting that in *California Motor Transport*, the Court had recognized "the right of access to the courts" as an aspect of the right to petition in antitrust cases and applying those values to the NLRA); *BE & K Const. Co. v. NLRB*, 536 U.S. 516 (2002) (applying the sham litigation standard developed in

*Noerr-Pennington* finds support in the caselaw. Although the Sixth Circuit has not

addressed whether the *Noerr-Pennington* doctrine bars RICO and Section 1985(3)

claims, other federal courts have. *See Campbell*, 509 F.3d at 790 ("Although the

*Noerr-Pennington* doctrine was initially recognized in the antitrust field, the

federal courts have by analogy applied it to claims brought under both state and

federal laws, including common law claims of tortious interference."). For

_____

*Pro. Real Estate Invs.*, an antitrust case, to the NLRA). Multiple lower courts have done the same, as discussed in this section.

It is true that some courts have questioned the direct of application of *Noerr-Pennington* outside of antitrust. For example, the Tenth Circuit applies the immunity developed in *Noerr* and *Pennington* "beyond antitrust situations," but "refer[s] to it as Petition Clause immunity, reserving the name, *Noerr-Pennington*, for antitrust cases." *CSMN Invs., LLC v. Cordillera Metro. Dist.*, 956 F.3d 1276, 1283 (10th Cir. 2020); *see also DIRECTV, Inc. v. Cavanaugh*, 321 F. Supp. 825, 840-41 (E.D. Mich. 2003) (recognizing "the incongruity of applying the *Noerr-Pennington* doctrine out of the antitrust context" and concluding that "the clearest, if not most legally accurate manner to examine DIRECTV's claim of immunity is under the Petition Clause of the First Amendment") (citing *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 208 F.3d 885 (10th Cir. 2000)); *Audi AG and Volkswagon of Am., Inc. v. D'Amato*, 341 F. Supp. 2d 734, 758 (E.D. Mich. 2004) ("Initially, courts were careful in referring to the *Noerr-Pennington* doctrine only *by analogy* when discussing the First Amendment right to petition." (quoting *Eaton v. Newport Bd. of Educ.*, 975 F.2d 292 (6th Cir. 1992)). According to these courts, *Noerr-Pennington* was based on both the Sherman Act and the First Amendment right to petition; of course, when applying immunity beyond antitrust and Sherman Act, it must be based on the right to petition. *See Cardtoons*, 208 F.3d at 889, *reversed on other grounds by Csmn Invs.*, 956 F.3d 1276. For the Tenth Circuit, "[t]his distinction is not completely academic." *Id.* at 890. In *Cardtoons*, for example, relying on the right to petition, rather than *Noerr-Pennington*, the court held that the plaintiff's prelitigation threats of suit to the defendant were not immunized because "there is no petition addressed to the government." *Id.* at 893; *cf. Sosa*, 437 F.3d at 937-38 ("[W]e regard the *Cardtoons* decision as an outlier, inconsistent with the weight of authority relevant to the First Amendment status of presuit litigation-related conduct."). Nevertheless, that case addressed the narrow issue of whether immunity applied to prelitigation actions. The court finds no reason, nor has EQMD provided one, to find that Defendants are not immune from suit regardless of whether the court calls it Petition Clause immunity or *Noerr-Pennington*; here, Defendants were directly petitioning the courts.

example, the Second, Seventh, and Ninth Circuits have all previously addressed whether *Noerr-Pennington* immunity applies to RICO claims and have universally held that it does. *See*, *e.g.*, *Int'l Brotherhood. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*, 196 F.3d 818, 826 (7th Cir. 1999) ("Although the *Noerr-Pennington* doctrine originated in antitrust law, its rationale is equally applicable to RICO suits."); *Sosa v. DirectTV, Inc.*, 437 F.3d 923, 933 (9th Cir. 2006) ("[Plaintiff's] RICO suit poses a burden on [Defendant's] communication of the demand letters almost identical to that posed by the Sherman Act claims on the petitioning conduct at issue in *Noerr* and its progeny."); *Mir v. Greines, Martin, Stein & Richland*, 676 F. App'x. 699, 701 (9th Cir. 2017) (applying the *Noerr-Pennington* doctrine to RICO claim); *Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*, 229 F.3d 1135 (table) (2d Cir. 2000) (same). Based on the preceding persuasive authority, the court finds that *Noerr-Pennington* immunity applies to EQMD's RICO claims.

As to Section 1985(3), the Seventh Circuit and the Eastern District of Pennsylvania have applied the *Noerr-Pennington* doctrine to such claims. *See Stevens v. Tillman*, 855 F.2d 394, 404–05 (7th Cir.1988) (noting applicability of *Noerr-Pennington* as defense to plaintiff's Section 1985(3) claim, but finding for defendants on other grounds); *Barnes Found. v. Twp. of Lower Merion*, 927 F. Supp. 874, 876 (E.D. Pa. 1996) (dismissing Section 1983 and 1985(3) claims under

13

*Noerr-Pennington* doctrine).  This court, in an unpublished decision in *Rondigo,*

*LLC v. Twp. of Richmond, Mich.*, No. 08-cv-10432, 2012 WL 1021726, at *4 (E.D.

Mich. Mar. 27, 2012), declined to extend the *Noerr-Pennington* doctrine to a

Section 1985(3) claim because, in part, it "was unable to find precedent extending

*Noerr-Pennington* immunity to claims arising under 42 U.S.C. § 1985(3)."  But

this case is not binding on this court because " '[a] decision of a federal district

court judge is not binding precedent in either a different judicial district, the same

judicial district, or even upon the same judge in a different case.' "  *Camreta v.*

*Greene*, 563 U.S. 692, 709 n.7 (quoting 18 J. Moore et al., Moore's Federal

Practice § 134.02[1] [d], p. 134–26 (3d ed. 2011)).  Besides, unlike in *Rondigo*,

this court has found examples of *Noerr-Pennington* immunity being applied to

Section 1985(3) claims, as noted above.  Moreover, both this court and the Sixth

Circuit have applied *Noerr-Pennington* immunity to similar claims brought under

Section 1983.  *See Knology, Inc. v. Insight Commc'ns.. Co., L.P.*, 393 F.3d 656,

658 (6th Cir. 2004) (The *Noerr-Pennington* doctrine "immunizes parties from

liability under antitrust laws or § 1983 for actions taken when petitioning

authorities to take official action"); *Conlara, Inc. v. Runkel*, 722 F. Supp. 1442,

1465–66 (E.D. Mich. 1985) (finding that courts have held that the *Noerr-*

*Pennington* doctrine shields defendants from Section 1983 claims).  For these

reasons, the *Noerr-Pennington* doctrine also applies to EQMD's Section 1985(3) claims.

### 1.    Sham Exception

Determining that *Noerr-Pennington* immunity applies does not end the inquiry—next, the court must decide whether the sham exception applies.  EQMD first argues that the sham exception applies because "Defendants used legal process regardless of the merits of the case with a purpose of intent to deprive EQMD of meaningful access to the agencies and courts."  (ECF No. 42, PageID.1372).  "[T]he sham exception is a 'narrow one.'"  *Westmac, Inc. v. Smith*, 797 F.2d 313, 318 (6th Cir. 1986).  It "encompasses situations in which persons use the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon."  *Omni*, 499 U.S. at 380.  "A 'sham' situation involves a defendant whose activities are 'not genuinely aimed at procuring favorable government action at all,' " as opposed to "one 'who "genuinely seeks to achieve his governmental result, but does so *through improper means*." ' "  *Id.* (first quoting *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 500 n.4 (1988); then quoting *id.* at 508 n.10).  An example of conduct amounting to a sham is "filing . . . frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay."  *Id.*  The sham exception thus turns on whether a *Noerr-*

*Pennington* defendant engaged in objectively baseless activity in order to vex and harass the opposing party. *Rondigo*, 2012 WL 1021726, at *2.

The Supreme Court has articulated a two-part test for determining when the sham exception applies:

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor, through the use of the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon. This two-tiered process requires the plaintiff to disprove the challenged lawsuit's legal viability before the court will entertain evidence of the suit's economic viability.

*Prof. Real Estate Investors*, 508 U.S. at 60–61 (quotations and footnote omitted) (emphasis removed).

Notwithstanding EQMD's arguments to the contrary (ECF No. 42, PageID.1371–73), the sham exception does not apply to the present case. As a preliminary matter, EQMD never raised the sham exception in its complaint. "Courts in the Sixth Circuit have routinely dismissed claims under the *Noerr-Pennington* doctrine for failure to adequately plead the sham litigation exception."

16

*Ashley Furniture Indus., Inc. v. Am. Signature, Inc.*, No. 2:11-cv-427, 2015 WL 12999664, at *4 (S.D. Ohio Mar. 12, 2015) (collecting cases).[2]  Moreover, although EQMD acknowledges the Supreme Court's decision in *Columbia Pictures* (ECF No. 42, PageID.1374), it makes no attempt to apply the two-part test articulated in that case.  *See United States v. Fowler*, 819 F.3d 298, 309 (6th Cir. 2016) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").  Besides, had EQMD done so, it would have revealed that the sham exception does not apply because Defendants' prior lawsuits are not "objectively baseless."  Indeed, EQMD negates such a showing by acknowledging that Defendants' motions have enjoyed repeated success in state court.  (ECF No. 1, PageID.7).  The very premise of EQMD's complaint is that it has been wronged due to this repeated success.  (*See generally* ECF No. 1).  For these reasons, the sham exception does not apply.

      **2.**    **Fraud Exception**

---

[2] Because the *Noerr-Pennington* doctrine is designed to protect First Amendment rights, and because an improper application of the sham exception could chill the exercise of such rights, a plaintiff alleging that conduct otherwise covered by the *Noerr-Pennington* doctrine falls within the sham exception must comply with Rule 9(b) by pleading with particularity "the 'who, what, where, when and how' of the misconduct," as well as plead "allegations regarding the specific activities which bring the defendant's conduct into one of the *Noerr-Pennington* exceptions."  *GMA Cover Corp. v. Saab Barracuda LLC*, No. 4:10-CV-12060, 2012 WL 642739, at *11 (E.D. Mich. Feb. 8, 2012).

EQMD also appears to argue that this court should recognize a fraud exception to *Noerr-Pennington* and that it applies here, although the argument is unclear because it is made under the section heading, "Sham exception." (ECF No. 42, PageID.1374–79). EQMD argues that "[t]he outright factual and legal misrepresentations alleged in this case ought not be construed as legitimate petitioning activities that should be constitutionally protected." However, as EQMD has acknowledged and the Fourth Circuit has noted, *Columbia Pictures* left unanswered the question of whether a fraud exception exists in the context of *Noerr-Pennington* immunity. *See Baltimore Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 401 (4th Cir. 2001) ("We need not decide here . . . whether and, if so, to what extent *Noerr* permits the imposition of antitrust liability for a litigant's fraud or other misrepresentations." (quoting *Columbia Pictures*, 508 U.S. at 62 n.6)). In *Baltimore Scrap*, the Fourth Circuit held that "[i]f a fraud exception to *Noerr-Pennington* does exist, it extends only to the type of fraud that deprives litigation of its legitimacy." *Id.* at 401–02 (citing *Cheminor Drugs v. Ethyl Corp.*, 168 F.3d 119, 123–24 (3d Cir. 1999) ("While we do not condone misrepresentations in a judicial setting, neither will we deprive litigants of immunity derived from the First Amendment's right to petition the government if the alleged misrepresentations do not affect the core" of the litigant's case.)); *see also Liberty Lake Invs., Inc. v. Magnuson*, 12 F.3d 155, 158–59 (9th Cir. 1993)

(*Columbia Pictures* "does not obviate application of the Court's two-part test for determining sham litigation in the absence of proof that a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.").

Notably, Plaintiff cites no Sixth Circuit case acknowledging a fraud exception. Thus, at best, Plaintiff argues for a reasonable extension of the law based on the dicta of cases outside of this circuit. Yet, even were the court inclined to entertain such an extension based on the cases Plaintiff discusses, the allegations contained in EQMD's complaint would be insufficient to sustain it. As noted in *Baltimore Scrap*, to the extent that a fraud exception might exist, frauds that "do not infect the core" of the case remain protected by *Noerr-Pennington* immunity. EQMD has failed allege facts from which it can be plausibly found that Defendants' conduct satisfies this standard.

First, EQMD argues that "[b]ecause Defendants do not provide notice of these court filings to EQMD, the courts are left to rely solely upon Defendants' misrepresentations, and frequently enter Orders disposing of EQMD claims buying into Defendants' proffered reason that 'EQMD is not licensed.' " (ECF No. 42, PageID.1377). However, this is not true across the board. EQMD had a least one opportunity to argue the merits of its case at the Michigan Court of Appeals, as demonstrated by the unpublished opinion in *Harbi v. State Farm Mutual Auto. Ins.*

*Co.*, No. 352139, 2020 WL 7302375 (Mich. Ct. App. Dec. 10, 2020).  In *Harbi*,

EQMD "argue[d] that the trial court improperly granted summary disposition

based on its finding that EQMD provided unlicensed services under the Public

Health Code, MCL 333.17748, and that its services were rendered unlawfully and

were, therefore, non-compensable under the no fault act, MCL 500.3157."  *Id.* at

*3.  The court of appeals disagreed with EQMD.  And regardless of the merits of

the decision, the mere existence of the appellate review undermines, to a degree,

EQMD's argument that it has not had the opportunity to litigate its case against

Defendants.  Furthermore, EQMD does not assert that it had a right to be heard in

the subject lawsuits.  For example, EQMD makes no allegation that it was a

necessary party in any of these lawsuits within the meaning of Michigan Court

Rule 2.205.  Nor does it allege that it attempted to intervene in *each* of the subject

lawsuits under Michigan Court Rule 2.209 or that Defendants tried to prevent any

such intervention.  The court notes that EQMD attaches, as an exhibit to its

response, a Michigan state court order denying its motion for reconsideration

concerning its prior motion to intervene in one of the subject lawsuits.  (ECF No.

42-29, PageID.2071).  But EQMD makes no argument that the state court's denial

of either its reconsideration or intervention motion was obtained as a result of

fraud.  And upon reviewing this particular state court order, it appears that the state

court made its decision independent of the alleged misrepresentations at issue in this case.  (*Id.*)

Second, to the extent that EQMD relies on Defendants' alleged misrepresentations relating to the LARA investigation, its argument fairs no better. EQMD claims that Defendants have argued in Michigan state courts that EQMD's submitted bills are not compensable because it was not a licensed pharmacy, despite knowledge of a LARA investigation finding otherwise.  (ECF No. 1, PageID.6, 16).  First, because EQMD is alleging fraud, Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake."  (emphasis added). The Sixth Circuit has held that Rule 9(b) requires a plaintiff to "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud" or, "the 'who, what, when, where, and how' of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006).  EQMD has failed to do so here.

To begin with, as to the "how" of the alleged fraud, even viewing the facts in the light most favorable to EQMD, it cannot be said that Defendants' arguments in the various state lawsuits were not "legitimate."  The LARA investigation was initiated by Farm Bureau, which claimed that EQMD billed it between 2015 and

2018 for pharmacy services without a license in violation of Michigan's Public

Health Code.  (ECF No. 1-1).  After conducting its own investigation, LARA

found no violation.  (ECF No. 1-3).  According to EQMD, Defendants have

continued to argue in state court that it requires a license, even though "LARA

rendered its determination that EQMD did not require a license for its activities."

(ECF No. 1, PageID.12).  But the LARA investigation merely found that EQMD

had not violated Michigan's Public Health Code as to Farm Bureau's specific

allegations—not that it was not required to have a license.  *See, e.g.*, *Harbi*, 2020

WL 7302375, at *3 ("Contrary to EQMD's assertion, the LARA letter does not

demonstrate that EQMD was not required to obtain a license under MCL

333.17748.  Rather, it merely indicates that LARA could not conclude that EQMD

had violated the Public Health Code as a result of an investigation that occurred

two years after the date of the services at issue in this case.").  Therefore, EQMD

fails to explain why the investigation's finding would preclude Defendants from

arguing that it needs a license.  Indeed, as noted above, EQMD acknowledges

Defendants' motions have been successful using these arguments.  Moreover, it is

not clear what effect LARA's conclusion has on State Farm's and Liberty's

arguments given that the investigation did not concern the bills EQMD submitted

to them.  Thus, even assuming that EQMD was not operating as an unlicensed

pharmacy, it has failed to plausibly set forth that State Farm's allegations to the

contrary amounted to misrepresentations before the state court that infects the core of the case to such an extent that any fraud exception applies.

Because EQMD has failed to show that either the sham exception is applicable here or that a fraud exception both exists and is applicable here, EQMD's federal claims under RICO and Section 1985(3) claims are barred by *Noerr-Pennington* immunity. Accordingly, Counts I and II are **DISMISSED WITH PREJUDICE.**

### C.    Declaratory Judgment Act (Count III)

Defendants argue that EQMD's Declaratory Judgment Act claim (Count III) fails because EQMD has failed to state a claim for violations of RICO and Section 1985(3). (ECF No. 22, PageID.800–01; ECF No. 25, PageID.854–55; ECF No. 26, PageID.863). The court agrees.

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that "[i]n a case of actual controversy within its jurisdiction . . . , any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." But Section 2201 does not create an independent cause of action. *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007) (citing *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671 (1950)). Accordingly, a federal court "must 'have jurisdiction already' under some other federal statute" before a plaintiff can

23

"invok[e] the Act." *Toledo v. Jackson,* 485 F.3d 836, 839 (6th Cir. 2007) (quoting

*Heydon v. MediaOne of S.E. Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003)).  Put

another way, "[t]he Declaratory Judgment Act is procedural in nature and 'does not

create an independent cause of action' that can be invoked absent some showing of

an articulated legal wrong." *Doe v. Univ. of Dayton*, 766 F. App'x. 275, 291 (6th

Cir. 2019) (quoting *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007)).

For the reasons stated above, EQMD's RICO and Section 1985(3) claims are

barred by *Noerr-Pennington* immunity.  No federal question exists without these

claims.  And, no diversity jurisdiction exists in this case because both EQMD and

State Farm are Illinois corporations.  (ECF No. 1, PageID.9–10).  Because EQMD

has no federal claim before this court, Count III fails.

EQMD's arguments to the contrary are not persuasive.  (ECF No. 42,

PageID.1387–89).  Although EQMD contends that it has made "some showing of

an articulated legal wrong," (ECF No. 42, PageID.1388), EQMD has failed to state

any federal cause of action for the reasons set forth above.  Accordingly, there is

nothing for this court to declare under the Declaratory Judgment Act.  Hence,

Count III is **DISMISSED WITH PREJUDICE**.

    D.   <u>Fraud Upon the Court (Count V)</u>

EQMD asserts a claim for relief based on "fraud upon the court" (Count V).

(ECF No. 1, PageID.32–34).  Count V is premised on Defendants' alleged frauds

on state tribunals; EQMD alleges that officers of the court, on behalf of

Defendants, have "present[ed] intentionally false representations of facts" to the

Michigan courts and have "prevent[ed] Plaintiff from fairly presenting its case or

defense by failing to provide any notice of court filings." (*Id.* at PageID.32–34).

The court finds, however, that it may not address this claim.

The genesis for seeking relief from a fraud on the court is Fed. R. Civ. P.

60(b)(3), which allows a party to seek relief from a judgment based on "fraud . . .

misrepresentation or misconduct by an opposing party." However, such relief has

historically been limited to the court that was allegedly defrauded. "Federal courts

have expressed hostility to the proposition that a mere allegation that a previous

judgment was obtained by 'fraud on the court' defeats the defense of *res judicata.*"

*LaMie v. Wright*, No. 1:12-cv-1299, 2014 WL 1686145, at *14 (W.D. Mich. Apr.

29, 2014) (citing *Plotner v. AT & T Corp.*, 224 F.3d 1161, 1170 (10th Cir. 2000)).

Indeed, "[t]his has been the rule in the Sixth Circuit for over 100 years." *Id.* (citing

*Kansas City F.T.S. & M.R. Co. v. Morgan*, 76 F. 429, 435 (6th Cir. 1896) (finding

it impermissible for a party to attack a judgment in a collateral proceeding on

account of fraud)). If a party believes that a previous judgment was procured by

fraud on the court, the proper course of action is for that party to bring a post-

judgment motion or an independent action in equity to vacate that judgment in the

original court—here, Michigan state court. *Id.* (collecting cases); *see also* 11

CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY K. KANE, FEDERAL PRACTICE & PROCEDURE § 2868, Westlaw (3d ed. updated Oct. 2020) ("The normal procedure to attack a judgment should be by motion in the court that rendered the judgment.").

Relatedly, while a federal court may have jurisdiction over a fraud-upon-the-court claim where the fraud may have infected a prior judgment of *this* court, it does not have jurisdiction where the fraud allegedly infected some other court's judgment. *See, e.g.*, *Carney v. United States*, 462 F.2d 1142, 1144 (Ct. Cl. 1972) (dismissing an independent action for fraud upon a district court because "[w]hen the prior judgment attacked in the 'independent action' is that of a different court, the new court must be one having 'independent and substantive equity jurisdiction' because the action is equitable in nature"); *Cherry v. New York City Dep't of Corr.*, No. 16-cv-5708, 2016 WL 6205797, at *1 (E.D.N.Y. Oct. 24, 2016) ("I am characterizing plaintiff's complaint as an independent action in equity to set aside the prior judgment because any other characterization of plaintiff's complaint would leave the claim without subject matter jurisdiction, or barred by *res judicata* or the statute of limitations."). Because EQMD's claim solely relates to fraud alleged to have occurred in state court proceedings, and its federal claims involving fraud have been dismissed as set forth above, the court finds that any action in equity for such a claim does not lie in this court.

Consequently, Count V is **DISMISSED WITHOUT PREJUDICE**.

E.      Abuse of Process (Count VI) and Civil Conspiracy (Count VII)

EQMD has also alleged abuse of process and civil conspiracy claims under

Michigan law.  Counts VI and VII are the only remaining claims against

Defendants.  (As explained below, EQMD's request for an injunction is not a

separate claim).  Where, as here, the court has "dismissed all claims over which it

has original jurisdiction," 28 U.S.C. § 1367(c)(3), the Sixth Circuit has repeatedly

advised that the district courts should not exercise supplemental jurisdiction over

state law claims.  *See*, *e.g.*, *Brown v. Cassens Transport Co.*, 546 F.3d 347, 363

(6th Cir. 2008).  Accordingly, the court declines EQMD's invitation to exercise

supplemental jurisdiction over these claims.  *See* 28 U.S.C. § 1367(c).  Counts VI

and VII are **DISMISSED WITHOUT PREJUDICE**.

F.      Injunction (Count IV)

"Injunctive relief is a remedy . . . , not an independent cause of action."

*Skidmore v. Access Grp., Inc.*, 149 F. Supp. 3d 807, 809 n.1 (E.D. Mich. 2015); *see*

*also Goryoka v. Quicken Loan, Inc.*, 519 F. App'x. 926, 929 (6th Cir. 2013) ("The

district court correctly found that [claims for quiet title and for injunctive relief] are

remedies and not separate causes of action" and "were properly dismissed.");

*Terlecki v. Stewart*, 278 Mich. App. 644, 663 (2008) ("It is well settled that an

injunction is an equitable remedy, not an independent cause of action."); *Henry v.*

*Dow Chem. Co.*, 473 Mich. 63, 96–97 (2005) ("It is not the remedy that supports the cause of action, but rather the cause of action that supports a remedy." (internal quotation marks and citation omitted)).  EQMD's response, by failing to address this well-established precedent, concedes as much.  (*See* ECF No. 42, PageID.1391–92).  Here, the court has dismissed all of EQMD's substantive claims.  Accordingly, this claim is **DISMISSED WITH PREJUDICE**.  Moreover, because this court has dismissed all of EQMD's claims, its request to amend the complaint to include a request for injunctive relief (ECF No. 42, PageID.1392) is **DENIED AS MOOT**.

## V.    MOTION TO SUPPLEMENT (ECF NO. 57)

### A.    Legal Standard

Federal Rule of Civil Procedure 15(d) provides that "on motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Courts have held that, like leave to amend a complaint, leave to supplement a complaint shall be "freely granted."  *See, e.g.*, *Coleman v. Gullet*, No. 12-10099, 2013 WL 4026839, at *5 (E.D. Mich. Aug. 6, 2013).  The decision to grant amendment or supplementation is within the sound discretion of the district court.  *See Hayden v. Ford Motor Co.*, 497 F.2d 1292, 1294 (6th Cir. 1974); *Cooper v. Bower*, No. 5:15-

CV-P249-TBR, 2017 WL 3389521, at *1 (W.D. Ky. Aug. 4, 2017).  The standard

for granting leave to amend under Rule 15(a) is identical to the standard governing

leave to supplement under Rule 15(d).  *See Spies v. Voinochi*, 48 F. App'x. 520,

527 (6th Cir. 2002).  In assessing whether to grant a motion for leave to amend or

supplement a pleading, a district court may consider such factors as (1) undue

delay in filing the motion; (2) lack of notice to adverse parties; (3) whether the

movant is acting in bad faith, or with a dilatory motive; (4) failure to cure

deficiencies by previous amendments; (5) the possibility of undue prejudice to

adverse parties; and (6) whether the amendment is futile.  *See Foman v. Davis*, 371

U.S. 178, 182 (1962); *Robinson v. Mich. Consol. Gas. Co.*, 918 F.2d 579, 591 (6th

Cir. 1990).  Delay by itself is not sufficient grounds to deny leave to amend or

supplement.  *See Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir.

1973); *Robinson*, 918 F.2d at 591.  Further, notice and substantial prejudice to the

opposing party are critical in determining whether to grant or deny such leave.  *See*

*Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 250 (6th Cir. 2000).  As

explained in *Cooper*, "[i]n every instance, the exercise of this discretion must be

guided by the animating principle behind Rule 15(d), which is 'to make pleadings

a means to achieve an orderly and fair administration of justice.'"  2017 WL

3389521, at *1 (quoting *Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.*, 377 U.S.

218, 227 (1964)).

B.    Concurrence

As relevant here, Local Rule 7.1 requires a moving party to seek concurrence and conference with the opposing party before filing a motion or explain why it cannot conduct a conference "despite reasonable efforts."  E.D. Mich. L.R. 7.1(a).  And, as noted in the undersigned's practice guidelines, "[t]he [c]ourt requires strict compliance with Local Rule 7.1(a) regarding concurrence, and the [c]ourt will impose costs for failure to comply with the Local Rule."

EQMD sent its request for concurrence via email to Defendants on Friday, July 10, 2020 at 10:49 P.M.  (ECF No. 64-1, PageID.1406).  About 40 minutes later, at 11:30 P.M., EQMD e-filed its motion to supplement.  (*Id.*)  Given the late hour of its request coupled with the brief interval allowed for response, the court finds that EQMD's actions were not "reasonable efforts" to obtain concurrence. (*See* ECF No. 64, PageID.4099).

C.    Futility

Moreover, EQMD's motion is futile.  EQMD seeks to supplement the complaint with additional state court motions for summary disposition—three filed by State Farm and one filed by Farm Bureau.  (*See generally* ECF No. 57).  As to the State Farm motions for summary disposition, EQMD has already called this court's attention to similar filings, which this court considered in detail as set forth earlier in this opinion.  These additional filings would make no difference in

today's ruling.  With respect to the Farm Bureau motion for summary disposition,

it was filed in May 2018.  (ECF No. 58-1, PageID.2530).  Therefore, it preceded

not only the LARA determination (February 2019) but also the original complaint

in this case (December 2019).  As Farm Bureau correctly points out, Rule 15(d)

permits a supplemental pleading only where, in contrast to here, a party seeks to

"set[] out any transaction, occurrence, or event that happened *after* the date of the

pleading to be supplemented."  (ECF No. 65, PageID.4116–17) (emphasis added).

Besides, because this motion for summary disposition was filed *before* the LARA

determination was issued, it does not support EQMD's argument that Farm Bureau

continued to make misrepresentations *after* the LARA determination.  Finally, to

the extent that EQMD is revisiting the issue of disqualifying Attorney Michael

O'Malley and the Kitch law firm, those issue have already been resolved by the

court.  (ECF No. 61).

    For these reasons, EQMD's motion to supplement is **DENIED**.

## VI.    CONCLUSION

    For the reasons set forth above, the motions to dismiss filed by State Farm

(ECF No. 22), Farm Bureau (ECF No. 25), and Liberty Mutual (ECF No. 26) are

**GRANTED**.  Counts I–IV are **DISMISSED WITH PREJUDICE** and Counts V–

VII are **DISMISSED WITHOUT PREJUDICE**.  **IT IS FURTHER ORDERED**

**THAT** EQMD's motion to supplement the complaint (ECF No. 57) is **DENIED**,

and State Farm's motion for leave to file supplemental authority (ECF No. 66) is

**GRANTED**.

     **IT IS SO ORDERED.**

Dated: March 5, 2021                <u>s/Stephanie Dawkins Davis</u>
                                          Stephanie Dawkins Davis
                                          United States District Judge